**George Allen MULL, Teresa Ann Mull, Percy Beard, and Brenda Beard, on behalf of themselves and all other persons similarly situated, Plaintiffs,**

v.

**ALLIANCE MORTGAGE BANKING CORPORATION; Amaximis Lending, L.P.; FirstPlus Home Loan Trust 1996–2; FirstPlus Home Loan Owner Trust 1996–3; FirstPlus Home Owner Loan Trust 1996–4; FirstPlus Home Loan Owner Trust 1997–1; FirstPlus Home Loan Owner Trust 1997–2; FirstPlus Home Loan Owner Trust 1997–3; FirstPlus Home Loan Owner Trust 1997–4; FirstPlus Home Loan Owner Trust 1998–1; FirstPlus Home Loan Owner Trust 1998–2; FirstPlus Home Loan Owner Trust 1998–3; FirstPlus Home Loan Owner Trust 1998–4; FirstPlus Home Loan Owner Trust 1998–5; German American Capital Corporation; Paine Webber Real Estate Securities, Inc.; Ace Securities Corporate Home Loan Trust 1999 A; Sovereign Bank; Real Time Resolutions, Inc.; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–1; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–2; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–3; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–4; and U.S. Bank, NA, ND, Defendants.**

No. 01–CV–2710 GV.

United States District Court,
W.D. Tennessee,
Western Division.

July 9, 2002.

Lee J. Bloomfield, Allen, Godwin, Morris, Laurenzi & Bloomfield, P.C., Memphis, TN, A. Hoyt Rowell, III, Fred Thompson, Daniel O. Myers, Kevin L. Oufnac, Ness, Motley, Loadholt, Richardson & Poole, Mount Pleasant, SC, Eric G. Calhoun, Lawson & Fields, PC, Dallas, TX, for plaintiffs.

W.J. Michael Cody, Jonathan P. Lakey, Samuel L. Crain, Jr., Burch, Porter & Johnson, Memphis, TN, Rick Solum, Patrick J. McLaughlin, Dorsey & Whitney LLP, Minneapolis, MN, Joseph A. Ingrisano, Kutak Rock LLP, Washington, DC, Cyrus Benson, III, White & Case, LLP, New York City, Tom Black, Black, Mann & Graham, Lewisville, TX, Jeffrey S. Jacobovitz, Kutak Rock LLP, Washington, DC, Scott T. Beall, Shepherd D. Tate, Michael A. Brady, Tate, Lazarini & Beall, PLC, Memphis, TN, Sheldon Zenner, Todd L. McLawhorn, David Stagman, Katten, Muchin & Zavis, Chicago, IL, John C. Speer, Baker, Donelson, Bearman & Caldwell, Memphis, TN, Thomas L. Allen, Roy W. Arnold, Mary J. Hackett, Reed Smith LLP, Pittsburgh, PA, for defendants.

Jimmy Moore, Memphis, TN, pro se.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

GIBBONS, District Judge.

On August 2, 2001, plaintiffs George Allen Mull, Teresa Ann Mull, Percy Beard, and Brenda Beard ("plaintiffs"), on behalf of themselves and all other persons similarly situated,[1] initiated this action in the

---

**1.** Class certification has not yet been requested.

Circuit Court of Shelby County, Tennessee against defendants Alliance Mortgage Banking Corporation ("Alliance"); Amaximis Lending, L.P.; FirstPlus Home Loan Trust 1996–2; FirstPlus Home Loan Owner Trust 1996–3; FirstPlus Home Owner Loan Trust 1996–4; FirstPlus Home Loan Owner Trust 1997–1; FirstPlus Loan Owner Trust 1997–2; FirstPlus Home Loan Owner Trust 1997–3; FirstPlus Home Loan Owner Trust 1997–4; FirstPlus Home Loan Owner Trust 1998–1; FirstPlus Home Loan Owner Trust 1998–2; FirstPlus Home Loan Owner Trust 1998–3; FirstPlus Home Loan Owner Trust 1998–4; FirstPlus Home Loan Owner Trust 1998–5 (collectively "FirstPlus Trusts"); German American Capital Corporation ("German American"); UBS Warburg Real Estate Securities, Inc. f/k/a Paine Webber Real Estate Securities, Inc. ("UBS"); Ace Securities Corporate Home Loan Trust 1999 A ("Ace Trust"); Sovereign Bank; Real Time Resolutions, Inc.; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–1; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–2; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–3; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–4 (collectively "Mego Mortgage Trusts"); and U.S. Bank, NA, ND (collectively "defendants" unless otherwise noted). Plaintiffs allege that defendants are current holders or assignees of certain second mortgage notes between non-party Mortgage Lenders Association, Inc. ("Mortgage Lenders") and plaintiff class members, and the mortgage notes violate the Tennessee statutory limitations on interest, loan origination fees, loan brokerage commissions and/or other loan charges established in Tennessee Code Annotated sections 47–14–102, 47–14–103, 47–14–112, 47–14–113, 47–14–117, 47–15–102, 47–15–

103, and 47–15–104, and the Rules of the Tennessee Department of Financial Institutions, chapter 0180–17. Plaintiffs also allege that Mortgage Lenders violated the Tennessee Consumer Protection Act ("TCPA"), Tenn.Code Ann. §§ 47–18–101 *et seq.*, which prohibits unfair or deceptive acts or practices. Additionally, plaintiffs allege that since Mortgage Lenders violated the above Tennessee statutory provisions, the loan agreements between plaintiffs and Mortgage Lenders are void or voidable as an illegal contract against public policy. Plaintiffs assert that defendants, as holders of the notes securing the mortgages, are liable for Mortgage Lenders' conduct. Plaintiffs seek relief in several forms, including injunctive and declaratory relief, compensatory and punitive damages, attorneys' fees, costs, and pre– and post-judgment interest. (Compl.¶¶ B–K.)

On March 27, 2002, defendant Sovereign Bank filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 1, 2002, defendant UBS also filed a motion to dismiss pursuant to Rule 12(b)(6). On that same date, defendants Alliance; Amaximus Lending; FirstPlus Trusts; German American; Ace Trust; Real Time Resolutions; Mego Mortgage Trusts; and U.S. Bank, collectively filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. The arguments raised in each of these three motions are substantially similar and will be dealt with by the court together; distinctions as to which defendant or defendants an analysis is applicable will be indicated as necessary. The four basic issues raised by defendants are: (1) whether this court has personal jurisdiction over some of the defendants; (2) whether plaintiffs have standing to assert

claims against some of the defendants; (3) whether assignees of the loans can be held liable for the actions of the original lenders; and (4) whether certain of plaintiffs claims are barred by Tennessee statutory provisions including statute of limitations, statute of repose, and exclusivity of remedies. The court now considers these motions.

The following factual allegations are included in plaintiffs' complaint and are taken as true for purposes of this order. The Mulls obtained a second mortgage home equity loan from Mortgage Lenders on January 29, 1997, which was secured by their residence in Memphis, Tennessee. *Id.* ¶ 35. The original principal amount of the loan was $30,000. *Id.* Their loan included the following costs: a 15.5% interest rate, a $1,500 origination fee, a $1,800 loan discount, a $12.50 credit report fee, a $125 title search fee, and a $65.25 recording fee/tax stamp. *Id.* ¶ 36. The last payment on the loan is scheduled for February 27, 2022. *Id.* ¶ 37. The Beards obtained a second mortgage home equity loan from Mortgage Lenders on July 1, 1997, which was secured by their residence in Memphis, Tennessee. *Id.* ¶ 42. The original principal amount of the loan was $35,000. *Id.* Their loan included the following costs: a 12.99% interest rate, a $700 origination fee, a $2,800 loan discount, a $12.50 credit report fee, a $125 title search fee, and a $70.95 recording fee/tax stamp. *Id.* ¶ 42. The last payment on the loan is scheduled for July 6, 2012. *Id.* ¶ 43. Plaintiffs assert that the interest rate and closing costs charged exceed that which is allowed under Tennessee law, that the fees charged were in excess of the costs incurred and for services not provided, and that Mortgage Lenders did not obtain a license from the Tennessee Commissioner of Financial Institutions or file a registration statement before making these loans. *Id.* ¶¶ 38–40, 44–46. Plaintiffs allege that defendants are "[u]pon information and belief...currently a holder of certain of the second mortgage loan notes made to class members." *Id.* ¶¶ 4–27.

The following facts are relevant to the jurisdiction analysis and are undisputed. John Murphy, President of Alliance, avers that Alliance is a New York corporation with its principal place of business in New York. (Murphy Aff. ¶¶ 1–2.) Alliance transacts no business in Tennessee and has no officers, employees, agents, or representatives in Tennessee. *Id.* ¶ 3. Alliance does not own, possess, lease, use or have any interest in real property in Tennessee. *Id.* ¶ 4. Alliance has not entered into any contracts with any Tennessee residents and it does not supply services or thing in Tennessee. *Id.* ¶ 5. Alliance has not solicited second mortgage loans in Tennessee, and it has not entered into any second mortgage loans in Tennessee. *Id.* ¶ 6. Alliance did not loan money to plaintiffs and did not originate their loans or collect or take from plaintiffs any loan charges or fees in connection with their loans. *Id.* ¶ 7. Alliance has never taken assignment of plaintiffs' loans and is not, and has never been, the holder of plaintiffs' loans. *Id.* ¶ 8.

Pamela Wieder, Vice President of U.S. Bank, attests that FirstPlus Home Loan Trust 1996–2 ("1996–2 Trust") was formed and created under the terms of a Pooling and Servicing Agreement, among First-Plus Investment Corporation, FirstPlus Financial, Inc., and FirstTrust of California, NA (now U.S. Bank, NA). (Wieder Aff. ¶¶ 1–3.) U.S. Bank, NA is the trustee of the 1996–2 Trust. *Id.* ¶ 3. U.S. Bank, NA is also the co-owner trustee and indenture trustee of the FirstPlus Home Loan Owner Trust 1996–3, 1996–4, 1997–1, 1997–2, 1997–3, 1997–4, 1998–1, 1998–2, 1998–3, 1998–4, and 1998–5 (collectively "Owner Trusts"). *Id.* ¶ 5; Wieder Aff. II ¶¶ 2–5.

The Owner Trusts were formed and created under the terms of trust agreements entered into in 1996 and 1997, pursuant to which Wilmington Trust Company is the owner trustee and U.S. Bank, NA is the co-owner trustee. (Wieder Aff. ¶¶ 6–7; Wieder Aff. II ¶¶ 3–5.) The purpose of the 1996–2 Trust and Owner Trusts (collectively "Trusts") is to hold mortgage loans, receive income from the mortgage loans, which is collected by the loan servicer, and distribute that income to holders of notes pursuant to the respective agreements which created the trusts. (Wieder Aff. ¶ 8; Wieder Aff. II ¶ 6.) The Owner Trusts issued notes under the terms of indentures between them and U.S. Bank, NA or First Bank, NA. (Wieder Aff. ¶ 9; Wieder Aff. II ¶ 7.) The Owner Trusts also issued certificates pursuant to the terms of the trust agreements. (Wieder Aff. ¶ 9.) All of the payments from the Owner Trusts are pledged to U.S. Bank, NA, as the indenture trustee, to secure the Owner Trusts' obligations and indentures, and Owner Trusts' estate is held by U.S. Bank, NA, for the benefit of the holders of the certificates issued pursuant to the trust agreements. (Wieder Aff. ¶ 10; Wieder Aff. II ¶ 8.) The 1996–2 Trust also issued certificates, pursuant to the terms of the Pooling and Servicing Agreement. (Wieder Aff. ¶ 11.) U.S. Bank, NA receives all payments on the mortgage loans held by the 1996–2 Trust and, after paying fees and expenses, remits the payments to the holders of the certificates issued by the 1996–2 Trust. *Id.*

The 1996–2 Trust was created in, and is located and administered in New York. *Id.* ¶ 12. The Owner Trusts are Delaware business trusts which are located and administered in Delaware. *Id.* ¶ 12; Wieder Aff. II ¶ 9. The 1996–2 Trust's only office is that which is maintained by U.S. Bank, NA in Minnesota as trustee. (Wieder Aff. ¶ 13.) The Owner Trusts' only office is that which is maintained as the Corporate Trust Office of Wilmington Trust Company in Delaware. *Id.* ¶ 13; Wieder Aff. II ¶ 10. The Trusts have no bank accounts in Tennessee. (Wieder Aff. ¶ 14; Wieder Aff. II ¶ 11.) The Trusts have no employees. (Wieder Aff. ¶ 15; Wieder Aff. II ¶ 12.) The Trusts have no agent in Tennessee and no representative of the Trusts has traveled to Tennessee on behalf of the Trusts. (Wieder Aff. ¶ 15; Wieder Aff. II ¶ 12.) None of the Trusts owns, possesses, leases, or uses real estate in Tennessee. (Wieder Aff. ¶ 17; Wieder Aff. II ¶ 16.) None of the Trusts engages in or transacts business in Tennessee. (Wieder Aff. ¶ 18; Wieder Aff. II ¶ 15.) None of the Trusts has entered into any contracts with any Tennessee resident or has contracted to supply any service or thing in Tennessee. (Wieder Aff. ¶ 19; Wieder Aff. II ¶¶ 17–20.) None of the Trusts has solicited second mortgage loans in Tennessee, nor has any of the Trusts solicited any of the named plaintiffs or putative class members for the purposes or originating second mortgage loans. (Wieder Aff. ¶ 20, Wieder Aff. II ¶¶ 19–20.) None of the Trusts has entered into second mortgage loans in Tennessee, and none of the Trusts has loaned money to any of the named plaintiffs or putative class members. (Wieder Aff. ¶ 21; Wieder Aff. II ¶¶ 19–20.) None of the Trusts has originated any loan to any named plaintiff or putative class member. *Id.* While the Trusts hold several thousand second mortgage loans throughout the country, in no case do the loans secured by Tennessee property held by Owner Trusts 1997–2, 1997–3, 1997–4, 1998–1, 1998–2, 1998–3, 1998–4, and 1998–5 exceed three percent of all the loans held by the Owner Trusts. (Wieder Aff. II ¶ 16.) The loans secured by Tennessee property held by Owner Trusts 1996–3, 1996–4, 1997–1 in no case exceed 1.3% of

all the loans held by the Trusts.[2] (Defs. Mot. to Dismiss, Ex. I at 37, Ex. J. at 40, Ex. K at S–27.)

The mortgage loans held by the Trusts were transferred and assigned to them under the terms of the Pooling and Servicing Agreement for the 1996–2 Trust and the Sale and Servicing Agreements for the Owner Trusts. (Wieder Aff. ¶ 22; Wieder Aff. II ¶¶ 21–22.) The Trusts do not service, and never have serviced, the loans assigned to them. (Wieder Aff. ¶¶ 23–24; Wieder Aff. II ¶¶ 23–24.) The loan servicer, Countrywide Home Loans, Inc. ("Countrywide") has the exclusive power and authority, independent of the Trusts, to perform all actions that are necessary or desirable in connection with the servicing and administration of the loans. (Wieder Aff. ¶¶ 23–24; Wieder Aff. II ¶¶ 23, 27.) Countrywide collects all payments under the loans and has the exclusive authority to act when any loan is in default, including the authority to foreclose or take any other action which may affect the ownership of the mortgaged property. (Wieder Aff. ¶ 24; Wieder Aff. II ¶¶ 23, 27.) The Trusts do not have the power or authority to enforce any rights under the mortgages. (Wieder Aff. ¶ 25; Wieder Aff. II ¶¶ 23–24.)

None of the Trusts has directly collected payments on any second mortgage loans in Tennessee, and none of the Trusts has directly collected any payments, fees, or commissions from any named plaintiff or putative class member in connection with any loan which is at issue in this suit. (Wieder Aff. ¶ 26; Wieder Aff. II ¶ 24.) Although the Trusts may hold notes of the putative class members, these notes are in the physical custody of Bank One, NA, in Texas. (Wieder Aff. ¶¶ 27–28; Wieder Aff. II ¶ 26.) Countrywide collects all payments and remits them to U.S. Bank, NA,

as the trustee of the 1996–2 Trust, and as the indenture trustee for the Owner Trusts. (Wieder Aff. ¶¶ 29–30; Wieder Aff. II ¶¶ 27–28.)

Ronaldo R. Reyes, an Associate of Bankers Trust Company, attests that the Ace Trust was created pursuant to a trust agreement naming Wilmington Trust Company the owner trustee. (Reyes Aff. ¶¶ 1–4.) The administrator of the Ace Trust is Bankers Trust Company. *Id.* ¶ 2. The purpose of the Ace Trust is to hold mortgage loans, to issue notes and certificates, and to distribute the payments the Ace Trust receives from the servicer of the loans to the holders of the notes and certificates. *Id.* ¶ 5. The Ace Trust is a Delaware business trust which is located and administered in Delaware. *Id.* ¶ 8. The trust's only office is the one maintained by the owner trustee as the Corporate Trust Office of Wilmington Trust Company, in Delaware. *Id.* ¶ 9. The trust's only bank accounts are those maintained by the owner trustee on behalf of Ace Trust, in Delaware or New York, and any payments received or made by the trusts are received or made only in Delaware or New York. *Id.* ¶ 10. The trust agreement prohibits the Ace Trust from having any employees in any state other than Delaware. *Id.* ¶ 11. The Ace Trust does not own, possess, lease, or use real estate in Tennessee. *Id.* ¶ 13. It transacts no business in Tennessee. *Id.* ¶ 14. The Ace Trust has not entered into any contracts with Tennessee residents, or contracted to supply any service or thing in Tennessee. *Id.* ¶ 15. The trust has not solicited second mortgage loans in Tennessee, and has not solicited any named plaintiff or putative class member for the purpose of originating a second mortgage loan. *Id.* ¶ 16. The Ace Trust has not entered into any

---

**2.** This percentage is based on the initial number of loans secured by Tennessee property in relationship to the total number of initial loans held by each Trust.

second mortgage loans in Tennessee, has not loaned any money to any named plaintiff or putative class member, and has not originated any loan to any named plaintiff or putative class member. *Id.* ¶ 17.

The mortgage loans held by the Ace Trust were assigned to the trust pursuant to a Sale and Servicing Agreement under which GMAC Mortgage Corporation ("GMAC") services the loans. *Id.* ¶¶ 18–19. GMAC has the exclusive power and authority, independent of the Ace Trust, to do all things which are necessary or desirable in connection with the servicing and administration of the loans. *Id.* ¶ 20. GMAC is authorized to take whatever steps are necessary to collect or foreclose on any loan which is in default. *Id.* ¶ 20. The loans secured by Tennessee property held by Ace Trust constitute less than 1.5% of all the loans held by it. (Defs. Mot. to Dismiss, Ex. C at S–37.) Wells Fargo Bank Minnesota, NA maintains physical custody of the notes held by the Ace Trust. (Reyes Aff. ¶ 24). GMAC services the loans out of its offices in Pennsylvania. *Id.* ¶ 25. GMAC remits the payments it collects to the agent for the indenture trustee in California. *Id.* ¶ 26.

The Mego Mortgage Loan Trusts 1997–3 and 1997–4 ("Trusts") were formed and created under the terms of trust agreements between Financial Asset Securities Corporation, Mego Mortgage Corporation, Wilmington Trust Company, as owner trustee, and U.S. Bank, NA as co-owner trustee. (Wieder Aff. III ¶¶ 3–5.) The purpose of the Trusts is to hold the owner trust estate, to receive income from second mortgage loans, and to distribute the payments received from the servicer of the loans to the holders of notes and certificates of beneficial interest in the Trusts. *Id.* ¶ 6. The Trusts issued notes under the terms of the indentures between the Trusts and U.S. Bank, NA, as indenture trustee. *Id.* ¶ 7. All of the payments from the loans held by the Trusts are pledged to U.S. Bank, NA, as indenture trustee, to secure the Trusts' obligations under the indentures. *Id.* ¶ 8.

The Trusts are Delaware business trusts located and administered in Delaware. *Id.* ¶ 9. The Trusts' only office must be maintained by the owner trustee as the Corporate Trust Office of Wilmington Trust Company, in Delaware. *Id.* ¶ 10. The trust agreements require that all bank accounts maintained by the owner trustee on behalf of the Trusts be located in Delaware or New York, or in St. Paul, Minnesota, with respect to U.S. Bank, NA. *Id.* ¶ 11. All payments received and made by the Trusts are received and made in Delaware, New York, or Minnesota. *Id.* The Trusts have no employees. *Id.* ¶ 12. The Trusts engage in no business in Tennessee, and have no officers, agents, or representatives in Tennessee. *Id.* ¶ 15. The Trusts do not own, lease, or use real property in Tennessee. *Id.* ¶ 16. The Trusts transact no business in Tennessee, and have not made any contracts with any Tennessee residents. *Id.* ¶¶ 17–18. The Trusts have solicited no second mortgage loans in Tennessee, and have not solicited plaintiff for the purpose of originating a second mortgage loan. *Id.* ¶ 19. The Trusts have not entered into any second mortgage loans in Tennessee, and have not loaned plaintiff any money. *Id.* ¶ 20.

The mortgage loans held by the Trusts were transferred to them pursuant to Sale and Servicing Agreements, which make the servicer responsible for all matters related to servicing the loans. *Id.* ¶¶ 21–23. The servicer has full power and authority, acting alone, to do all things in connection with administering the loans, including collecting all payments and enforcing performance of or remedies in connection with the loans. *Id.* ¶ 23. The Trusts have not themselves collected pay-

ments from any loan obligors in Tennessee or from plaintiffs. *Id.* ¶ 24. U.S. Bank, NA, located in Minnesota, maintains physical custody of the mortgage notes. *Id.* ¶ 26. The mortgage notes are serviced by OCWEN Federal Bank ("OCWEN"), which is located in Florida. *Id.* ¶ 27. Real Time Resolution ("RTR") services notes that are in default or recovery from its offices in Texas. *Id.* ¶ 27. OCWEN and RTR bill for and collect all payments from and in their respective offices. *Id.* All payments are remitted by the servicers to U.S. Bank, NA, as indenture indenture trustee, in its offices in Minnesota. *Id.* ¶ 28. The Trusts do not themselves collect payments on or enforce second mortgage loans. *Id.* ¶ 29.

■ Defendants Alliance, FirstPlus Trusts, Ace Trust, and Mego Mortgage Trusts first contend that plaintiffs' action against them should be dismissed since this court lacks personal jurisdiction over them. To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a *prima facie* showing of facts sufficient to justify personal jurisdiction. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998). The plaintiff may not rely on his pleadings; he must, by affidavit or otherwise, set forth specific facts establishing that the court has jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991) (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir.1974)). Presented with a properly supported motion to dismiss, the court has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen,* 935 F.2d at 1458 (citing *Serras v. First Tenn. Bank Nat'l Ass'n.,* 875 F.2d 1212, 1214 (6th Cir.1989)). In all

cases, the plaintiff bears the burden of establishing that jurisdiction exists. *Theunissen,* 935 F.2d at 1458. Here, since the court did not hold an evidentiary hearing,[3] it must consider the pleadings, depositions, and affidavits in the light most favorable to the plaintiff. *Dean,* 134 F.3d at 1272. However, this requirement does not compel the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir.1997).

■ To determine whether the court may exercise personal jurisdiction over a nonresident defendant, the court must first determine whether it has jurisdiction under the long-arm statute of the state in which the court sits. *Dean,* 134 F.3d at 1273; *Serras,* 875 F.2d at 1216. The Tennessee long-arm statute, Tenn.Code Ann. § 20–2–214(a)(6), extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause. *Payne v. Motorists' Mut. Ins. Co.,* 4 F.3d 452, 455 (6th Cir.1993). Therefore, courts in Tennessee only need to determine whether the assertion of personal jurisdiction over a defendant violates federal constitutional due process. *Id.*

■ Consistent with the Due Process Clause, courts can exercise personal jurisdiction over a defendant so long as that defendant has "certain minimum contacts" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Within the minimum contacts doctrine, there is a distinction between general and specific personal jurisdiction. *Aristech Chem. Int'l v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627–28 (6th

---

**3.** No party suggests that the court should hold an evidentiary hearing to resolve this motion.

Cir.1998). General jurisdiction exists when a defendant's forum activities are "substantial" or "continuous or systematic," even though they are unrelated to the cause of action. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 446–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In general, proving general jurisdiction over a nonresident defendant is difficult, as evidenced by the greater number of cases rejecting such jurisdiction rather than finding it. *See Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.,* No. 02A01–9803–CH–00055, 1998 WL 846708, at *7 n. 4 (Tenn. Ct.App.1998) (observing that "[t]he Supreme Court cases following *International Shoe* have applied the minimum contacts test in a more conservative manner when the issue was one of general jurisdiction").

 By contrast, specific jurisdiction exists when a defendant has sufficient minimum contacts that arise from or are related to the cause of action. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868. Specific personal jurisdiction is appropriate when three criteria are satisfied:[4] (1) the defendant purposely avails himself of the privilege of acting in the forum state or intentionally causes a consequence there; (2) the plaintiff's cause of action arises from the defendant's actions in the forum state; and (3) the exercise of personal jurisdiction is reasonable in light of the defendant's acts or the consequences of his acts in the forum state. *Aristech,* 138 F.3d at 628; *Payne,* 4 F.3d at 455; *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). The Court of Appeals for the Sixth Circuit has made clear that purposeful availment is "the *sine qua non* for *in personam* jurisdiction." *Kerry Steel,* 106 F.3d at 150 (1997) (quoting *Mohasco,* 401 F.2d at 381–82). The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Kerry Steel,* 106 F.3d at 150.

In this case, plaintiffs argue that the following contacts justify the exercise of general personal jurisdiction over defendants: defendants' purchase of at least seventy-four second mortgage loans secured by property held by Tennessee residents (Wieder Aff. ¶ 16); defendants' receipt of income from these mortgages, *id.* ¶ 6; and defendants' holding of notes secured by mortgages from Tennessee residents secured by real property located within the state, *id.* ¶ 21.[5]

4. In applying these elements, the contacts of each defendant must be assessed individually. *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Additionally, it is the named class representatives whose claims must satisfy these elements in order for the Court to have personal jurisdiction over defendants in the action. *Barry v. Mortgage Servicing Acquisition Corp.,* 909 F.Supp. 65, 73 (1995).

5. Plaintiffs repeatedly argue in their consolidated response that they have not had an opportunity to develop evidence beyond the documents presented by the assignee defendants with respect to defendants' motion to dismiss for lack of personal jurisdiction. Specifically, plaintiffs contend that they have attempted to conduct discovery regarding factual information which would address this issue, but that defendants have not been responsive to their requests. Plaintiffs also claim that they will file a motion to compel this discovery. In the Rule 16(b) Scheduling Order of March 20, 2002, the court ordered that discovery would be limited to issues

■ Defendants argue that they have insufficient contacts with the state of Tennessee to justify this court exercising general personal jurisdiction over them. To support this contention, defendants point the court to *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F.Supp. 65 (D.R.I. 1995). In *Barry*, plaintiff asserted that an assignee defendant with no banking operations, offices, or real property in Rhode Island, no personnel that travel regularly to Rhode Island, and no solicitation of business or formation of contracts within Rhode Island, still was subject to the personal jurisdiction of Rhode Island since the defendant was the assignee of 138 mortgages secured by real property in Rhode Island. Without deciding whether an assignment of a mortgage constitutes an ownership interest in the property, the court rejected plaintiff's contention that standing alone, the fact that defendant held 138 mortgages secured by Rhode Island property, is sufficient to confer general personal jurisdiction. *Id.* at 74–75. This court finds the reasoning in *Barry* compelling.[6] When a defendant's forum activities consist solely of holding mortgages secured by property in the forum state, the contacts cannot be characterized as continuous or systematic such that an exercise of general personal jurisdiction would be permissible. With this principle in mind, the court examines the contacts of each defendant with the state of Tennessee.

The court first addresses whether it has general jurisdiction over defendants First-Plus Trusts. Plaintiffs argue that the following contacts justify the exercise of general personal jurisdiction over these defendants: defendants' purchase of at least seventy-four second mortgage loans secured by property held by Tennessee residents (Wieder Aff. ¶ 16); defendants' receipt of income from these mortgages, *id.* ¶ 6; and defendants' holding of notes secured by mortgages from Tennessee residents secured by real property located within the state, *id.* ¶ 21. As discussed above, the holding of mortgages secured by property in Tennessee, without more, is insufficient to confer personal jurisdiction over defendants. However, plaintiffs have not alleged that defendants have any other contacts with Tennessee. In addition, plaintiffs do not contest that the Trusts have no employees or agents in Tennessee, nor that they have no representatives that have traveled to Tennes-

raised by or related to motions to remand and motions to dismiss. The deadline for responding to such motions was originally set for May 1, 2002 and was later extended to June 11, 2002 to provide plaintiffs the opportunity to receive responsive information to their ·discovery requests from defendants. However, as of the date of this order, plaintiffs have not filed a motion to compel; additionally, they did not seek to extend the deadline for responding to the motion to dismiss. Due to these failures, the court finds plaintiffs' assertion that they have not had an opportunity to develop evidence beyond the documents presented by defendants unconvincing. Thus, the court will proceed with its analysis based upon the evidence that is presently before it.

**6.** Plaintiffs try to convince the court that the reasoning in *Barry* is inapposite. Their logic is that in *Barry*, the issue was whether Rhode Island courts could assert jurisdiction over a dispute between a Massachusetts borrower and a national bank headquartered in Texas, involving a loan secured by Massachusetts property. In contrast, they argue, this is a case dealing with Tennessee courts exercising jurisdiction over disputes between Tennessee borrowers and holders of their notes secured by Tennessee property. However, plaintiffs miss the point. Nowhere in their complaint do plaintiffs allege that their loans, which are secured by Tennessee property, are held by defendants. Instead, plaintiffs argue that an exercise of personal jurisdiction is appropriate only based upon the holding of mortgages secured by Tennessee property unrelated to their own claims.

see. (Wieder Aff. ¶ 15; Wieder Aff. II ¶ 12.) Plaintiffs also do not contest that none of the Trusts has entered into any contracts with any Tennessee resident or has contracted to supply any service or thing in Tennessee. (Wieder Aff. ¶ 19; Wieder Aff. II ¶¶ 17–20.) While the Trusts hold several thousand second mortgage loans throughout the country, in no case do the loans secured by Tennessee property held by Owner Trusts 1997–2, 1997–3, 1997–4, 1998–1, 1998–2, 1998–3, 1998–4, and 1998–5 exceed three percent of all the loans held by the Trusts. (Wieder Aff. II ¶ 16). Similarly, the loans secured by Tennessee property held by Owner Trusts 1996–3, 1996–4, 1997–1 in no case exceed 1.3% of all the loans held by the Trusts. (Defs. Mot. to Dismiss, Ex. I at 37, Ex. J at 40, Ex. K at S–27.) Furthermore, an independent servicer has exclusive power to perform all acts in connection with administering the loans, including collecting payments and enforcing performance of or seeking remedies with respect to the loans. (Aff. ¶ 24; Wieder Aff. II ¶ 23). Since plaintiffs can point to no contacts with Tennessee other than the Trusts' holding of mortgages secured by property in Tennessee, the court finds that it cannot exercise general personal jurisdiction over these defendants.

The court next addresses whether it has general jurisdiction over defendant Alliance. Plaintiffs point to no affidavit, deposition, or other testimony to support their contention that Alliance has continuous and systematic contacts with Tennessee; plaintiffs point only to the affidavit of Pamela Wieder, Vice President of U.S. Bank, NA. Plaintiffs do not explain how Wieder's affidavit relates to Alliance.

Thus, the court finds that plaintiffs have not met their burden to support their contention that Alliance has the continuous and systematic contacts required to subject it to liability for acts unrelated to its contacts with Tennessee.

Similarly, plaintiffs point to no evidence to show general personal jurisdiction over Ace Trust or the Mego Mortgage Trusts. Relying upon the uncontested affidavits provided by defendants,[7] the court finds the facts regarding these defendants' contacts with Tennessee substantially similar to that of the FirstTrust defendants such that an exercise of general personal jurisdiction over these defendants would be inappropriate. The Trust has no employees and it has no offices or bank accounts in Tennessee. (Reyes Aff. ¶¶ 9–11.) They have not solicited or entered into any second mortgage loans in Tennessee. *Id.* ¶ 16. An independent servicer has exclusive power to perform all acts in connection with administering the loans, including collecting payments and enforcing performance of or seeking remedies with respect to the loans. *Id.* ¶ 20. The loans secured by Tennessee property held by Ace Trust constitute less than 1.5% of all the loans held by it. (Defs. Mot. to Dismiss, Ex. C at S–37.) Physical custody of the mortgage notes is with Wells Fargo Bank Minnesota, NA. *Id.* ¶ 24. With respect to the Mego Mortgage Trusts, they have no employees. (Wieder V Aff. ¶ 12.) They have not solicited or entered into any second mortgage loans in Tennessee. *Id.* ¶¶ 19–20. An independent servicer has exclusive power to perform all acts in connection with administering the loans, including collecting payments and enforcing performance of or remedies with respect to the loans. *Id.*

7. The court notes that the affidavits regarding the Mego Mortgage Trusts only addresses Mego Mortgage Home Loan Trusts 1997–3 and 1997–4. Since plaintiffs have not provided any evidence relating to Mego Mortgage Trusts 1997–1 and 1997–2, they fail to meet their burden to establish a *prima facie* case that Mego Mortgage Trusts 1997–1 and 1997–2 have the continuous and systemic contacts required for general personal jurisdiction.

¶ 23. Physical custody of the mortgage notes is with U.S. Bank, NA in Minnesota. *Id.* ¶ 26. Since plaintiffs can point to no contacts with Tennessee other than defendants' holding of unrelated mortgages secured by property in Tennessee, the court finds that it cannot exercise general personal jurisdiction over these defendants.

The court now addresses whether plaintiffs have shown that this court has specific jurisdiction over defendants. As discussed above, to establish specific jurisdiction, plaintiffs must demonstrate that their suit arises out of or is related to defendants' contacts with Tennessee. Plaintiffs do not allege which, if any, defendants actually hold their second mortgage loans. They merely assert "[u]pon information and belief, [defendants are] currently a holder of certain of the second mortgage loan notes made to class members." (Compl.¶¶ 4–27.) Since named plaintiffs' claims must satisfy the requirements for personal jurisdiction, a general allegation that defendants hold the mortgages made to putative class members is insufficient. This court does not have specific personal jurisdiction over any defendant that does not allegedly hold named plaintiffs' loans.[8] Since plaintiffs fail to meet their burden in showing which defendants hold their loans, this court cannot find personal jurisdiction over any defendant. Thus, the court grants Alliance's, FirstPlus Trusts', Ace Trust's, and Mego Mortgage Trusts' motion to dismiss for lack of personal jurisdiction.

Next, the court addresses the contention of defendants Amaximis Lending, German American, Real Time Resolutions, U.S. Bank, Sovereign Bank, and UBS that plaintiffs' action against them should be dismissed pursuant to Rule 12(b)(6) due to lack of standing, since no allegation is made that any of defendants hold the loans made to named plaintiffs. Article III of the United State Constitution provides that federal courts may hear only justiciable cases or controversies. U.S. Const. Art. III, § 2; *see also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir.1997) (noting that Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies'" and that "[t]he threshold question in every federal case is whether the court has the judicial power to entertain the suit" (internal citations omitted)). In evaluating whether a case is justiciable, a court must determine whether the plaintiff has standing to bring the lawsuit. *Id.* at 279–80. The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must have suffered an injury in fact. This injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations and citations omitted). Second, standing requires a causal connection between the plaintiff's injury and the defendant's action: the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (internal quotations and citations omitted). Third, it must be likely that the requested relief will redress the plaintiff's injury. *Id.* at

---

**8.** Both parties discuss at length the relevance of a case recently decided by the United States District Court for the District of Kansas, *Pilcher v. Direct Equity Lending*, 189 F.Supp.2d 1198 (D.Kan.2002). In *Pilcher*, plaintiffs actually alleged which assignee defendants held their loans. In contrast, named plaintiffs in the instant action have specifically avoided informing the court which defendants hold their loans. Thus, it need not be decided at this time whether the actual holding of named plaintiffs' loans would subject an assignee defendant to the specific personal jurisdiction of this court.

561, 112 S.Ct. 2130. (internal quotations and citations omitted).

] In a class action (or potential class action), the individual standing of each named plaintiff vis-a-vis each defendant is a threshold issue. *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir.1998) (internal citations omitted). Named plaintiffs do not acquire standing by virtue of bringing a class action. *Id.* Rather,

> a plaintiff "cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." This is true even though the plaintiff may have suffered an injury identical to that of the other parties he is representing. .

*Thompson v. Bd. of Educ. of the Romeo Cmty. Schs.,* 709 F.2d 1200, 1204 (6th Cir. 1983) (quoting *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 462 (9th Cir. 1973)). However, there are two exceptions to the general rule that each member of a plaintiff class must have a cause of action against each defendant:

> (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and (2) Instances in which all defendants are *juridically related* in a manner that

suggests a single resolution of the dispute would be expeditious.

*Id.* at 1204–05 (emphasis in original) (citing *LaMar,* 489 F.2d at 462).[9] A juridical relationship among defendants is most often found "[w]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional." *Id.* at 1205 (quoting *Mudd v. Busse,* 68 F.R.D. 522, 527–28 (N.D.Ind.1975)). It is also used in cases in which there is a contractual obligation among all defendants. *See, e.g., United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C.1977).

 The only claims that are before this court are those of named plaintiffs. Thus, each named plaintiff must demonstrate that he satisfies the requirements of standing vis-a-vis each defendant. Since named plaintiffs fail to state which defendant actually holds their loans, they fail to meet this test with respect to any of the defendants. Instead, plaintiffs state that they will lack standing as to those defendants that do not hold the named plaintiffs' loans only if they do not succeed on the issue of class certification. However, even assuming that this court were to certify plaintiffs as a class, this would not cure the

9. In *LaMar,* the court discussed the two exceptions within the context of whether plaintiff met Rule 23's requirement that "the representative party will fairly and adequately protect the interests of the class":

> [W]e assert that a plaintiff who has no cause of action against the defendant can not "fairly and adequately protect the interests" of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect. Obviously this position does no embrace situations in

which all injuries are the result of a conspiracy or concerted schemes between the defendants at show hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*LaMar,* 489 F.2d at 466 (internal citations omitted). The court did not first address the issue of standing since it ultimately held that plaintiffs were not entitled to bring a class action against defendants with whom they had no dealing. *Id.* at 464.

fact that named plaintiffs do not have standing against any defendant who does not actually hold their loans.[10]

Furthermore, plaintiffs do not fall within the "juridical link" exception. The types of cases that fall within this exception are those that have either a contractual obligation among all defendants or a state or local statute which requires common action by defendants. Neither of these situations exist in the present action. Despite this failing, plaintiffs rely on *Moore v. Comfed Savings Bank*, 908 F.2d 834, 838–39 (11th Cir.1990), to support their position that defendants are juridically linked.[11] In *Moore*, however, although the Eleventh Circuit discussed the juridical link exception, it did not expressly resolve the standing question, but rather found that defendants were properly joined pursuant to Federal Rule of Civil Procedure 20. Thus, *Moore* does not support plaintiffs' position that defendants are juridically linked when plaintiffs' loans are originated by a common lender and subsequently assigned to unrelated defendants.

▮▮▮ Plaintiffs' reliance upon the joinder rules similarly does not cure named plaintiffs' lack of standing. Plaintiffs argue that joinder of the assignee defendants that do not hold named plaintiffs' loans is required since these defendants are necessary parties under Federal Rule of Civil Procedure 19(a).[12] They assert that without the presence of the assignee defendants in this action, complete relief cannot be accorded to the class members. However, this assumes that class members are parties to this action. Since class certification has not yet been ordered, or even requested, joinder of additional parties related to unnamed class members would be inappropriate at this time. Moreover, procedural rules, such as the joinder rules, cannot expand the jurisdiction of the federal courts, and thus, cannot confer standing where a case or controversy otherwise would not exist. *See, e.g., Christiansen v. Beneficial Nat'l Bank*, 972 F.Supp. 681, 683 (S.D.Ga.1997); *United States ex rel. Tenn. Valley Authority v. Easement and Right of Way*, 204 F.Supp. 837, 840 (E.D.Tenn.1962).

Finally, plaintiffs attempt to convince the court that they have standing pursuant to the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), Pub.L. No. 103–325, 108 Stat. 2190 (codi-

---

**10.** Furthermore, plaintiffs' contention that class certification issues are "logically antecedent" to standing issues is contrary to law. Although the Supreme Court states in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), that the "class certification issues are, as they were in [*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)], 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing," it prefaced this statement by saying, "[o]rdinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits." *Ortiz*, 527 U.S. at 831, 119 S.Ct. 2295. Moreover, the Court determined that class certification was improper and never specifically addressed whether standing existed. Therefore, this court sees no reason why it should address class certification issues, which are not even presently before it, before addressing whether plaintiffs have standing against defendants.

**11.** In *Moore*, the plaintiffs' loans were originated by a common lender who subsequently sold them to savings and loans companies throughout the country. *Moore*, 908 F.2d at 836.

**12.** Rule 19(a) states, in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties...

Fed. R. Civ. Pro 19(a).

fied as amended at 15 U.S.C. §§ 1602(aa), 1639, and 1641(d)), which amended the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*. The crux of their argument is based on the following logic: Plaintiffs first assert that the injuries of which they complain are based upon the second mortgage loans entered into by themselves and the originating lender such that plaintiffs have standing to sue the original lender. Second, they point to HOEPA which states that "any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage..." 15 U.S.C. § 1641(d)(1). Finally, plaintiffs reason that under HOEPA's assignee liability provisions, the assignee defendants do not possess any defense, including standing, distinct from the defenses that would be available to the lender. However, plaintiffs logic is flawed as they mistakenly focus on the language regarding "all claims and defenses." Since standing is a threshold jurisdictional question, the proper focus of the standing inquiry deals with the following clauses: "any person who purchases or is otherwise assigned a mortgage" and "with respect to that mortgage that the consumer could assert against the creditor of the mortgage." As stated above, named plaintiffs do not have standing to sue someone who does not actually hold their loans. HOEPA does nothing to alter the requirements of Article III standing; rather, it merely eliminates holder in due course defenses for assignees of certain high cost mortgages when the assignee holds the plaintiffs' loans. *See, e.g., In re Rodrigues*, 278 B.R. 683, 688 (Bankr.D.R.I.2002); *Vandenbroeck v. Contimortgage Corp. and Greentree Fin. Servicing Corp.*, 53 F.Supp.2d 965, 968 (W.D.Mich.1999); *In re Murray*, 239 B.R. 728, 733 (Bankr. E.D.Pa.1999).

Pursuant to the above analysis, plaintiffs do not have standing against any defendant that does not hold plaintiffs' loans. However, plaintiffs fail to specify which defendants, if any, actually hold their loans. Thus, the court grants Amaximis Lending's, German American's, Real Time Resolutions', U.S. Bank's, Sovereign Bank's and UBS's motions to dismiss.

In accordance with the above discussion, the court concludes that it does not have personal jurisdiction over Alliance Mortgage Banking Corporation; Firstplus Home Loan Trust 1996–2; FirstPlus Home Loan Owner Trust 1996–3; First-Plus Home Owner Loan Trust 1996–4; FirstPlus Home Loan Owner Trust 1997–1; FirstPlus Loan Owner Trust 1997–2; FirstPlus Home Loan Owner Trust 1997–3; FirstPlus Home Loan Owner Trust 1997–4; FirstPlus Home Loan Owner Trust 1998–1; FirstPlus Home Loan Owner Trust 1998–2; FirstPlus Home Loan Owner Trust 1998–3; FirstPlus Home Loan Owner Trust 1998–4; FirstPlus Home Loan Owner Trust 1998–5; Ace Securities Corporate Home Loan Trust 1999 A; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–1; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–2; Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–3; and Financial Asset Securities Corporation, Mego Mortgage Home Loan Owner Trust 1997–4. Thus, these defendants' motion to dismiss is granted. Additionally, the court finds that, based on the facts presently before the court, plaintiffs do not have standing to assert claims against Amaximis Lending, German American, Real Time Resolutions, U.S. Bank, NA, ND, Sovereign Bank or UBS. Thus, their motions to dismiss are

granted. The dismissal is without prejudice as to any defendant that may actually hold plaintiffs' loans.

IT IS SO ORDERED.