Richard and Mossilean **WILLIAMS**, and **Stephen W. Helton**, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

**FIRSTPLUS HOME LOAN OWNER TRUST 1998–4; Firstplus Home Loan Owner Trust 1998–2; U.S. Bank, National Association; and Wilmington Trust Company, individually and as representatives of a class of assignees, Defendants.**

Michael and Amber **Stallings**, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Empire Funding Home Loan Owner Trust 1997–3; U.S. Bank, National Association; and Wilmington Trust Company, individually and as representatives of a class of assignees, Defendants.

Nos. 03–2507–DV, 03–2548–DP.

United States District Court, W.D. Tennessee, Western Division.

March 30, 2004.

L.L.C., Mount Pleasant, SC, Eric G. Calhoun, Lawson, Fields, McCue, Lee & Campbell, Addison, TX, for plaintiffs.

W.J. Michael Cody, Jonathan P. Lakey, Samuel L. Crain, Jr., Burch, Porter & Johnson, Earle J. Schwarz, Glankler Brown, PLLC, Memphis, TN, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

DONALD, District Judge.

Before the Court are (1) the motion of U.S. Bank, National Association ("USB-NA")[1] and Wilmington Trust Company ("Wilmington") (collectively "Trustees") in Case No. 03–2507 to dismiss this case for lack of personal jurisdiction;[2] and (2) the motion of Empire Funding Home Loan Owner Trust 1997–3 ("Empire 1997–3") and the Trustees in Case No. 03–2548 to dismiss this case for lack of personal jurisdiction.[3] For the following reasons, the Court grants in part the motions to dismiss, finding that Plaintiffs have not met their burden of making a prima facie showing of personal jurisdiction over Empire 1997–3 or Wilmington. The Court also denies in part the motions to dismiss, finding that Plaintiffs demonstrated sufficient facts for the Court to exercise personal jurisdiction over USBNA.

Lee J. Bloomfield, Godwin, Morris, Laurenzi & Bloomfield, P.C., Memphis, TN, Daniel O. Myers, Kevin L. Oufnac, Richardson, Patrick, Westbrook & Brickman,

1. The parties stipulated that USBNA is named only in its capacity as trustee.

2. This motion was brought by USBNA, Wilmington, Firstplus Home Loan Owner Trust 1998–4 ("FP Trust 1998–4"), and Firstplus Home Loan Owner Trust 1998–2 ("FP Trust 1998–2"). On February 12, 2004, the Court held that it was without personal jurisdiction as to FP Trust 1998–4 and FP Trust 1998–2 and ordered Plaintiffs in Case No. 03–2507 to show cause why this Court should not grant Defendants' motion to dismiss for lack of personal jurisdiction over USBNA and Wilmington as well. This order resolves the remaining issues of personal jurisdiction over USBNA and Wilmington.

3. The Court consolidated these cases on December 3, 2003. The Court reminds Plaintiffs that all future documents in these consolidated cases must be filed under Case No. 03–2507.

## I. Factual Background[4]

■ Richard Williams, Mossilean Williams, and Stephen Helton (collectively "Firstplus Plaintiffs") bring their action on behalf of themselves and all other persons similarly situated ("Firstplus Class Members"). They are residents of Shelby County, Tennessee. USBNA is a national banking association and is a co-owner and indenture trustee of previously dismissed Defendants Firstplus Home Loan Owner Trust 1998–4 ("FP Trust 1998–4") and Firstplus Home Loan Owner Trust 1998–2 ("FP Trust 1998–2") (collectively "FP Trusts"). Wilmington is a Delaware banking corporation and is a co-owner trustee of the FP Trusts. The Firstplus Plaintiffs allege that the FP Trusts are current holders and assignees of certain second mortgage notes secured by property in Tennessee and received by the Firstplus Class Members from Firstplus Financial, Inc. ("Firstplus"). The Firstplus Plaintiffs further allege that several other entities, not currently named as defendants, also hold such second mortgage loans by assignment.[5] They claim that fees, interest rates, and other charges on these notes violate Tennessee statutory law.

The Williams obtained a second mortgage home equity loan ("Williams loan") from Firstplus on January 28, 1998. The Williams loan is secured by the Williams's residence in Cordova, Tennessee. The original principal amount of the Williams loan was $21,728.44. The term of the Williams loan is fifteen years, with the last payment scheduled for February 2, 2013. The loan included a 15.25% interest rate with a disclosed annual percentage rate ("APR") of 16.067%, a $835.15 service charge, a $849.60 voluntary IUI premium, and a $43.69 recording fee. These fees were financed so as to be added to the principal balance of the loan. The Firstplus Plaintiffs allege that, sometime after the closing of the loan, Firstplus consolidated the Williams loan in a loan pool and assigned the loan pool to USBNA as indenture trustee for FP Trust 1998–4. The assignment has not been recorded in Shelby County. The Williams have made monthly payments on this loan.

Helton obtained a second mortgage home equity loan ("Helton loan") from Firstplus on November 28, 1997. The loan is secured by Helton's residence in Memphis, Tennessee. The original principal amount of the Helton loan was $29,365.65. The term of the Helton loan is fifteen years, with the last payment scheduled for December 3, 2012. The loan included a 15.75% interest rate with a disclosed APR of 16.579%, a $1,127.43 service charge, and a $52.47 recording fee. These fees were financed so as to be added to the principal balance of the loan. The Firstplus Plaintiffs allege that, sometime after the closing

---

4. The factual background is taken from Plaintiffs' complaints. On a Rule 12(b)(2) motion to dismiss a class action, the court assesses whether the named plaintiffs, rather than the class members, have themselves established personal jurisdiction over the defendants. *See Williams v. FirstPlus Home Loan Trust 1996–2, et al.,* 209 F.R.D. 404, 410 n. 4 (W.D.Tenn.2002). Therefore, the facts presented here address Plaintiffs' own situations.

5. Plaintiffs allege that the following entities are assignees of second mortgage loans originated by Firstplus in Tennessee to the First-plus Plaintiffs and Firstplus Class Members: Firstplus Home Loan Owner Trusts 1996–2, 1996–3, 1996–4, 1997–1, 1997–2, 1997–3, 1997–4, 1998–1, 1998–3, 1998–5; German American Capital Corporation; UBS Warburg Real Estate Securities, Inc., f/k/a/ Paine Webber Real Estate Securities, Inc.; Ace Securities Corp. Home Loan Trust 1999–A and Wachovia Bank as trustee; Sovereign Bank; Real Time Resolutions; U.S. Bank, National Association, North Dakota; and GRMT Mortgage Loan Trust 2001–1 and JP Morgan Chase Bank as trustee.

of the loan, Firstplus consolidated the Helton loan in a loan pool and assigned the loan pool to USBNA as indenture trustee for FP Trust 1998–2. The assignment has not been recorded in Shelby County. Helton has made monthly payments on this loan.

Michael and Amber Stallings (collectively "Seacoast Plaintiffs") bring their action on behalf of themselves and all other persons similarly situated ("Seacoast Class Members"). They are residents of Shelby County, Tennessee. USBNA is a co-owner and indenture trustee of Empire 1997–3. Wilmington is a co-owner trustee of Empire 1997–3. The Seacoast Plaintiffs allege that Empire 1997–3 is the current holder and assignee of certain second mortgage notes secured by property in Tennessee and received by the Seacoast Class Members from Seacoast Equities, Inc. ("Seacoast"). The Seacoast Plaintiffs further allege that several other entities, not currently named as defendants, also hold such second mortgage loans by assignment.[6] They also claim that fees, interest rates, and other charges on these notes violate Tennessee statutory law.

The Stallings obtained a second mortgage home equity loan ("Stallings loan") from Seacoast on July 10, 1997. The loan is secured by the Stallings's residence in Cordova, Tennessee. The original principal amount of the Stallings loan was $40,000.00. The term of the Stallings loan is fifteen years, with the last payment scheduled for July 20, 2012. The loan included a 16.25% interest rate with a disclosed APR of 17.813%. The loan had fees including a $2,700.00 servicing fee, a $75.00 appraisal fee, a $40.00 credit report fee, $25.00 and $34.89 Fed Ex charges, a $16.00 flood certification fee, a $75.00 document preparation fee, a $175.00 settlement fee, a $140.00 title search fee, a $50.00 attorney fee, a $236.50 title insurance fee, a $30.00 courier fee, and a $93.70 recording fee. These fees were financed so as to be added to the principal balance of the loan. The Seacoast Plaintiffs allege that, sometime after the closing of the loan, Seacoast assigned the Stallings loan to Empire Funding. Empire Funding then consolidated the Stallings loan in a loan pool and assigned the loan pool to USBNA as indenture trustee for Empire 1997–3. The assignment has not been recorded in Shelby County. The Stallings have made monthly payments on this loan.

USBNA operates throughout the United States, including within Tennessee. USBNA maintains and operates more than sixty branch locations in Tennessee. Records in Shelby County indicate that USBNA has foreclosed on more than seventy properties within Shelby County. USBNA has foreclosed on other properties throughout Tennessee.

---

**6.** Plaintiffs allege that the following entities are assignees of second mortgage loans originated by Seacoast in Tennessee to the Seacoast Plaintiffs and Seacoast Class Members: Empire Funding Home Loan Owner Trust 1997–1, 1997–2, 1997–4, 1997–5, 1998–1, 1998–2, 1998–3, 1999–1, and USBNA as trustee; Firstplus Home Loan Owner Trusts 1997–1, 1997–2, 1997–3, 1997–4, 1998–1, 1998–2, 1998–3, 1998–4, 1998–5, and USBNA as trustee; German American Capital Corporation; UBS Warburg Real Estate Securities, Inc., f/k/a/ Paine Webber Real Estate Securities, Inc.; Ace Securities Corp. Home Loan Trust 1999–A and Wachovia Bank as trustee; Sovereign Bank; U.S. Bank, National Association, North Dakota; GRMT Mortgage Loan Trust 2001–1 and JP Morgan Chase Co. as trustee; PSB Lending Corp.; United Mtg CB, LLC; Impac Secured Assets CMN Trust 1998–1, and Deutsche Bank as trustee; Impac CMB Trust 1999–1 and Deutsche Bank as trustee; United National Bank Home Loan Trust 1999–1, and USBNA as trustee; United National Bank Home Loan Trust 1999–2, and USBNA as trustee; HomeQ Servicing Corp., f/k/a/ TMS Mortgage; Banc One Financial Services, Inc.; and Household Finance Corp.

## II. Procedural Background

The Williams filed their first class action complaint on October 2, 2001, in the Circuit Court of Shelby County, Tennessee, alleging violations similar to those in the instant case by the FP Trusts and USB-NA, as well as several other named defendants. After removal, on July 10, 2002, Judge Gibbons dismissed the case, holding that the non-resident defendants, including the FP Trusts, were not subject to personal jurisdiction in Tennessee and that the Williams did not have standing to sue any defendant that did not hold the Williams's own loan. *See Williams v. FirstPlus Home Loan Trust 1996–2 ("Williams I")*, 209 F.R.D. 404 (W.D.Tenn.2002). The Williams did not specify which defendant held their loan. The loan attributable to the Williams in that case is the same loan at issue here.

Judge Gibbons also dismissed several other cases brought by other plaintiffs on similar facts to the instant case and for the same reasons.[7] One of those cases, *Street v. PSB Lending Corp., et al.*, No. 01–2751 GV, 2002 WL 1797773 (W.D.Tenn. July 31, 2002), involved Empire 1997–3 and USB-NA as defendants, as well as the FP Trusts and several others. Judge Gibbons in *Street* held that the plaintiffs had not demonstrated personal jurisdiction over Empire 1997–3 or the FP Trusts. Judge Gibbons did not address personal jurisdiction over USBNA in either *Street* or *Williams I*. None of the Plaintiffs in the instant cases were involved in *Street*.

The Firstplus Plaintiffs filed their case in federal court on July 9, 2003. The Seacoast Plaintiffs filed their case in federal court on July 28, 2003. All Plaintiffs

allege that Defendants violated (1) the Tennessee statutory limits on interest, *see* Tenn.Code Ann. §§ 47–14–102, 47–14–103, 47–15–102; Tenn. Dept. of Fin. Inst. ("D.F.I.") Rules; (2) the Tennessee statutory limits on loan charges, *see* Tenn.Code Ann. §§ 47–14–102, 47–14–113; Tenn. D.F.I. Rules, Ch. 0180–17–.07(2); and (3) the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101 *et seq.*

The Defendants in Case No. 03–2507 filed this motion to dismiss on December 22, 2003, arguing that they were not subject to personal jurisdiction in Tennessee. Defendants filed a supplemental memorandum on January 14, 2004. Plaintiffs responded on February 2, 2004. On February 12, 2004, the Court granted in part this motion to dismiss, holding that the Court did not have personal jurisdiction over the FP Trusts. The Court ordered the Firstplus Plaintiffs to show cause why USBNA and Wilmington should not also be dismissed for lack of personal jurisdiction.

The Defendants in Case No. 03–2548 filed this motion to dismiss on December 22, 2003. They argue that (1) res judicata bars the Seacoast Plaintiffs from relitigating the issue of general personal jurisdiction over Empire 1997–3; (2) even if res judicata does not apply, they are not subject to general personal jurisdiction in Tennessee; and (3) they are not subject to specific personal jurisdiction in Tennessee. Defendants filed a supplemental memorandum on January 14, 2004. Plaintiffs responded on February 2, 2004.

On February 12, 2004, Defendants filed a consolidated reply brief, reasserting their arguments. Plaintiffs filed an additional memorandum on March 18, 2004,

---

7. *See also Mull v. Alliance Mortgage Banking Corp.*, 219 F.Supp.2d 895 (W.D.Tenn.2002); *Odom v. GMAC–Residential*, No. 01–cv–2713 (W.D.Tenn. July 31, 2002); *Frazier v. Preferred Credit*, No. 01–cv–2714, 2002 WL 31039856 (W.D.Tenn. July 31, 2002); *Brooks v. Terra Funding, Inc.*, No. 01–cv–2946, 2002 WL 1797785 (W.D.Tenn. July 31, 2002); *Williams v. Zed Corp., Inc.*, No. 02–cv–2045 (W.D.Tenn. Aug. 15, 2002).

responding to the Court's order to show cause and arguing for personal jurisdiction over USBNA and Wilmington.

In support of their motions, Defendants filed with the Court affidavits of Pamela Wieder, Vice President of USBNA.[8] According to Ms. Wieder's affidavit regarding Empire 1997–3, Empire 1997–3 was created pursuant to a trust agreement among Painewebber Mortgage Acceptance Corporation IV, as Depositor; Empire Funding Corp., as the Company; Wilmington, as Owner Trustee; and USBNA, d/b/a First Bank National Association, as Co-Owner Trustee on August 1, 1997. (Wieder Aff. ¶ 3.) USBNA is also the Indenture Trustee for Empire 1997–3. (*Id.* ¶ 2.) The purposes of Empire 1997–3 are "to hold second mortgage loans . . . receive income from the second mortgage loans, distribute the payments received from the Servicer to holders of notes and certificates of beneficial interest in the Trusts, and issue certificates and notes under the terms of Indenture of Trust . . ." (*Id.* ¶ 6.) Empire 1997–3 issued notes under the terms of an Indenture between it and USBNA, d/b/a/ First Bank National Association, as Indenture Trustee, dated August 1, 1997. All payments from the second mortgage loans held by Empire 1997–3 are pledged to USBNA, as the Indenture Trustee, to secure Empire 1997–3's obligations under the Indentures. (*Id.* ¶ 8.)

Pursuant to the trust agreement, Empire 1997–3 has an office only in Delaware; it has no offices in Tennessee. (*Id.* ¶ 10.) Pursuant to the trust agreement, all bank accounts maintained by the Owner Trustee on behalf of Empire 1997–3 must be in Delaware or New York, except with respect to the Co-owner Trustee or the Indenture Trustee on behalf of the Owner Trustee. All payments into Empire 1997–3 are to be received in only Delaware or New York. All payments made by Empire 1997–3 are made only from Delaware or New York, except with respect to the Co-owner Trustee or the Indenture Trustee on behalf of the Owner Trustee. USBNA may maintain accounts for Empire 1997–3 in Minnesota. (*Id.* ¶ 11.)

Pursuant to the trust agreement, Empire 1997–3 has no employees, nor any agents in Tennessee. No employee or agent of Empire 1997–3 has traveled to Tennessee on behalf of Empire 1997–3. (*Id.* ¶ 12.) No officers or representatives of Empire 1997–3 are located in Tennessee. (*Id.* ¶ 15.)

Empire 1997–3 is limited to certain activities specified in the trust agreement. (*Id.* ¶ 13.) Those activities do not include the direct collection of mortgage loans or the direct enforcement of rights under mortgages. (*Id.* ¶¶ 14, 24.) Empire 1997–3 has not directly collected payments, fees, or commissions from Tennessee consumers with respect to second mortgage loans in Tennessee. (*Id.* ¶ 24.)

Other than in connection with their ownership of second mortgage notes, Empire 1997–3 does not own, lease, or use real estate in Tennessee. (*Id.* ¶ 16.) It has not made contracts within Tennessee. (*Id.* ¶ 18.) It has not solicited or entered into second mortgage loans in Tennessee. (*Id.* ¶¶ 19–20.)

Empire 1997–3 holds notes secured by second deeds of trusts or mortgages encumbering real estate in Tennessee, as well as in other states. (*Id.* ¶ 25.) USB-

---

8. Plaintiffs argue that Ms. Wieder's affidavits should be given little effect because, they assert, she makes incorrect legal conclusions in them. The Court, of course, will determine legal conclusions here. The Court, however, declines to ignore the factual assertions made in Ms. Weider's affidavits, given that facts must be presented to establish personal jurisdiction.

NA, in Minnesota, has physical custody of these notes and acts as custodian of the notes pursuant to agreements with Empire 1997–3 and for the account of Empire 1997–3. (*Id.* ¶ 26.)

A Sale and Servicing Agreement among Empire 1997–3, as Issuer; Painewebber Mortgage Acceptance Corporation IV, as Depositor; Empire Funding Corp., as Transferor and Servicer; and USBNA, d/b/a First Bank National Association, as Indenture Trustee and Co–Owner Trustee transferred and assigned the mortgage loans held by Empire 1997–3 to it on August 1, 1997. (*Id* ¶ 21.)

Ocwen Federal Bank ("Ocwen" or "Servicer") services the mortgage notes at its offices in Florida. Ocwen submits statements to the makers or obligors of the notes, and the makers or obligors of the notes make the payments called for by the notes to Ocwen at its Florida offices. (*Id.* ¶ 27.) Ocwen services the loans under provisions of the Sale and Servicing Agreement, which afford the Servicer the " 'full power and authority, acting alone, to do any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable' " and direct the Servicer " 'to collect all payments called for under the terms and provisions of each Home Loan.' " (*Id.* ¶ 23.) Ocwen remits all payments collected on these notes to USBNA in Minnesota. (*Id.* ¶ 28.)

### III. Legal Standard

▆▆▆ Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing jurisdiction. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of juris-

diction." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002)). A prima facie showing of jurisdiction may be established based upon the plaintiff's presentation of specific facts, by affidavit or otherwise. *Theunissen,* 935 F.2d at 1458. Presented with a properly supported motion to dismiss, the court has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird,* 289 F.3d at 871. This requirement, however, does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir.1997).

▆▆▆ In diversity actions, a federal court applies the law of the forum state in which it sits to determine whether personal jurisdiction is appropriate. The court may maintain jurisdiction over a non-resident defendant only in accordance with the forum state's long-arm statute and the limitations of the Due Process Clause of the United States Constitution. *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994); *Procter & Gamble Cellulose Co. v. Viskoza–Loznica,* 33 F.Supp.2d 644, 660 (W.D.Tenn.1998). In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause. *See* Tenn.Code Ann. § 20–2–214(a)(6) (2004). Therefore, the Court need only determine whether the assertion of personal jurisdiction over Defendants

would violate the Due Process Clause. *Williams I,* 209 F.R.D. at 410.

Consistent with the Due Process Clause, courts can exercise personal jurisdiction over a defendant "so long as that defendant has 'certain minimum contacts' with the forum state such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction may be either specific or general, depending on the nature of the defendant's contacts with the forum state. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992).

■ General jurisdiction arises when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989).

■ Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action. *Williams,* 209 F.R.D. at 410. The plaintiff must establish that (1) the defendant purposefully availed himself of the privilege of acting in the forum state or intentionally caused a consequence in the forum state, (2) the cause of action arose from the defendant's activities in the forum state, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise

of jurisdiction reasonable. *See Aristech Chem. Intern. Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 628 (6th Cir.1998); *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). In applying these elements, the contacts of each defendant must be assessed individually. *See Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Purposeful availment is the most important criterion. *See Kerry,* 106 F.3d at 150. The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. 559).

## IV. Analysis

### A. Empire 1997–3

#### 1. Res Judicata

■ Defendants argue that the Seacoast Plaintiffs are precluded by the doctrine of res judicata from relitigating the issue of general personal jurisdiction over Empire 1997–3, because of Judge Gibbons's holding in *Street* that the Court lacked personal jurisdiction over Empire 1997–3.[9] The Court disagrees.

---

9. In *Street,* Judge Gibbons specifically reserved the issue of specific personal jurisdiction over Empire 1997–3 and the other trust defendants on the facts presented here. *See Street,* 2002 WL 1797773, at *12 n. 10 ("[I]t

need not be decided at this time whether the actual holding of named plaintiff's loan would subject an assignee defendant to the specific personal jurisdiction of this court."). Therefore, neither res judicata nor collateral estop-

Under res judicata, a claim is barred by prior litigation if the following four elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997) (emphasis omitted).

The Seacoast Plaintiffs were not plaintiffs in any prior case filed against these Defendants. Defendants argue that the Seacoast Plaintiffs are in privity with the named plaintiff in *Street*, Mattie Street, because the basis of their claim for personal jurisdiction is identical to the claims made by Ms. Street in the prior case. Defendants also argue that the Seacoast Plaintiff's privity is shown because, if their desired class is certified, or if the class in *Street* had been certified, based on the facts alleged, both they and Ms. Street would be members of those classes.

The Sixth Circuit considers three categories of privity: (1) successors in interest to the parties in a prior case, (2) non-parties who controlled the prior case, and (3) non-parties who were adequately represented by a party in the prior case. *See Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir.1999). Neither the first nor the second category is at issue here. The third category may be established in one of two ways: (1) when there is an express or implied legal relationship in which parties to the first suit are accountable to non-parties, or (2) when a non-party manifests an express agreement to be bound by or acquiescence to a party's representation. *See id.* at 423. Privity is not established from a prior class action case when the class in the first case was never certified. *See id.* at 425 (no privity because plaintiffs opted out of class before judgment in prior suit); *Bittinger*, 123 F.3d at 880–82 (no privity because prior court did not certify a class); *see also* Restatement (Second) of J. § 41 ("A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is ... [t]he representative of a class of persons similarly situated, *designated as such with the approval of the court*, of which the person is a member.") (emphasis added).

Privity has not been established in this case. There was neither an express nor an implied legal relationship of accountability between Ms. Street and the Seacoast Plaintiffs; they are simply individuals with similar legal difficulties. There is also no evidence of an express agreement by the Seacoast Plaintiffs to be bound by or to acquiesce in any judgment obtained by Ms. Street in the prior suit. Finally, because the class in the prior proceeding was never certified, *Street*, 2002 WL 1797773, at *1 n. 1, the judgment from the prior case does not bind the Seacoast Plaintiffs or any potential class members, other than the named plaintiff in that prior case. The Seacoast Plaintiffs are therefore not precluded by res judicata from relitigating the general personal jurisdiction issue here.[10]

pel apply to the specific personal jurisdiction question.

10. While Defendants argue vaguely that collateral estoppel also bars the Seacoast Plaintiffs' litigation of general personal jurisdiction over Empire 1997–3, collateral estoppel does not apply here. Collateral estoppel requires a showing that (1) the precise issue raised in the present case was raised and actually litigated in the prior proceeding; (2) determina-

## 2. General Personal Jurisdiction

In *Williams I*, Judge Gibbons held that "When a defendant's forum activities consist solely of holding mortgages secured by property in the forum state, the contacts cannot be characterized as continuous or systematic such that an exercise of general personal jurisdiction would be permissible." *Williams I*, 209 F.R.D. at 411; *see also Street*, 2002 WL 1797773, at *10. The plaintiff in *Street* argued that the following contacts justified the exercise of general personal jurisdiction over Empire 1997–3 and the other defendant trusts: their purchase of at least seventy-four second mortgage loans secured by property held by Tennessee residents, their receipt of income from these mortgages, and their holding of notes secured by mortgages from Tennessee residents secured by real property located within Tennessee. *Street*, 2002 WL 1797773, at *10. Judge Gibbons found that these alleged contacts indicated only that the defendants held mortgages secured by property in Tennessee, which was insufficient contact for general personal jurisdiction. *Id.* The Court agrees with Judge Gibbons's reasoning. Merely holding notes secured by real property in Tennessee, unrelated to a plaintiff's own cause of action, does not show the systematic or continuous contacts necessary for the exercise of general personal jurisdiction.

Judge Gibbons relied on *Barry v. Mortgage Servicing Acquisition Corporation*, 909 F.Supp. 65 (D.R.I.1995). In *Barry*, the district court ruled that the plaintiff's mere allegation that the defendant held mortgage notes secured by property in Rhode Island was insufficient for the exercise of general personal jurisdiction, when the plaintiff's own mortgaged property was located in Massachusetts, rendering the Rhode Island mortgage notes unrelated to the plaintiff's cause of action. *See id.* at 74–75 ("Where the property is completely unrelated to the plaintiff's cause of action, the presence of the defendant's property in the forum will not alone support the exercise of jurisdiction. Such is the case here where the 138 mortgages secured by Rhode Island property are unrelated to Barry's claims which are the only ones properly considered by the Court for purposes of this jurisdictional analysis, as he is the named class representative."). In *Street*, the plaintiff did not allege that her own note was held by any particular defendant, and therefore, the defendants' mortgage notes secured by Tennessee real property were unrelated to the plaintiff's own cause of action.

The Seacoast Plaintiffs allege that the Stallings loan was consolidated in a loan pool that was assigned to Empire 1997–3 specifically. (Compl.¶ 103.) The facts regarding Empire 1997–3 are therefore slightly different from those alleged in *Street*. By identifying Empire 1997–3 as the holder of the Stallings loan's note, Empire 1997–3's contacts with Tennessee are now related to the Seacoast Plaintiffs' cause of action. Such a connection alone, however, does not show the systematic or continuous contacts needed for the exercise of general personal jurisdiction. Again, Plaintiffs have shown only that Empire 1997–3 is the assignee of a mortgage note secured by property in Tennessee, and that alone is insufficient to show the

---

tion of that issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding.

*NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir.1987). The Seacoast Plaintiffs were not involved in *Street* and therefore did not have a full and fair opportunity to litigate the jurisdictional issue in that prior proceeding.

substantial contacts necessary for general personal jurisdiction.

 The Seacoast Plaintiffs argue that Ocwen, the servicer of the notes, is an agent of Empire 1997–3, and that Ocwen's activities in the forum state on behalf of Empire 1997–3 are systematic and continuous enough for the Court to exercise general personal jurisdiction over the alleged principal, Empire 1997–3. Tennessee Code Annotated § 20–2–214 does allow personal jurisdiction over a nonresident based on the acts of that nonresident's agent: "Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative." Tenn.Code Ann. § 20–2–214(c). In determining whether an agency relationship exists, the principal's right to control the actions of an agent is an important factor, but that right of control is not necessarily as important as the principal's actual exercise of control over the agent. *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn.2000).

Empire 1997–3 characterizes this as an independent contractor relationship and asserts that it has no agents in Tennessee. Plaintiffs argue that this is an agency relationship because (1) Ocwen's collection of payments and enforcement of mortgages is done on behalf of Empire 1997–3; (2) Ocwen acts by asserting Empire 1997–3's rights and privileges; and (3) USBNA, as trustee, prepared a limited power of attorney for Ocwen. None of these assertions indicates that Empire 1997–3 had a right to control Ocwen, let alone that it actually did control Ocwen. It is Plaintiffs' burden to make a prima facie showing that personal jurisdiction exists. Plaintiffs have not alleged facts that would show an agency relationship between Ocwen and Empire 1997–3, such that general personal jurisdiction could be maintained over Empire 1997–3 based on the actions of Ocwen.

Furthermore, even if the Court found an agency relationship to exist or found that Ocwen had apparent authority in relation to Empire 1997–3, the Court finds that Ocwen's acts of servicing the notes secured by property in Tennessee are not systematic or continuous enough to warrant the exercise of general personal jurisdiction in Tennessee over Empire 1997–3.

Therefore, the Court holds that Plaintiffs have failed to meet their burden of showing general personal jurisdiction over Empire 1997–3 in courts in Tennessee.

### 3. Specific Personal Jurisdiction

 The Court must first decide whether Empire 1997–3 purposefully availed itself of the privilege of acting in Tennessee. " 'Purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state].' " *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 482 (6th Cir.2003) (quoting *Neogen Corp.*, 282 F.3d at 891), *cert. denied*, —— U.S. ——, 124 S.Ct. 399, 157 L.Ed.2d 279 (2003). Purposeful availment is shown when the defendant's contacts with the forum state result from actions by the defendant itself that create a substantial connection with the forum state, and when the defendant's contacts with the forum state are such that it should reasonably anticipate being haled into court there. *Id.* "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174).

The specific issue presented here is whether, by purchasing a consolidated loan pool that happened to contain loans secured by real property located in Tennessee, Empire 1997–3 intended, or had the purpose, to avail itself of the privileges of acting in Tennessee. Several other courts considering specific personal jurisdiction on similar facts have ruled that purposeful availment was not shown. *See, e.g., Mazur v. Empire Funding Home Loan Owner Trust 1997–3*, No. 03–CV–74103–DT, at 10–12 (E.D.Mich.2004) (finding no purposeful availment in Michigan when trusts, including Empire 1997–3, simply purchased pools of secondary mortgages, some of which were secured by property in Michigan); *Pilcher v. Direct Equity Lending*, 189 F.Supp.2d 1198, 1209 (D.Kan. 2002).

The reasoning of those sister courts applies here. Empire 1997–3 did not solicit any mortgages from the Seacoast Plaintiffs, did not negotiate with the Seacoast Plaintiffs, and did not enter into any contracts with the Seacoast Plaintiffs in the forum state. It merely purchased consolidated loan pools that happened to include loans secured by real property in Tennessee, as well as loans secured by property located in other states. Those loan pools were consolidated by Empire Funding, an entity separate from Empire 1997–3, and personal jurisdiction over a defendant may not be established based on the actions of another party. Plaintiffs argue that Empire 1997–3 had a strategy of acquiring secondary mortgage loans nationwide securing geographically diverse property. The evidence, however, indicates no intention on the part of Empire 1997–3 to structure its acquisition of property in Tennessee.

Empire 1997–3 is the current holder and assignee of notes securing Tennessee real property. The Seacoast Plaintiffs allege that Empire 1997–3 took assignment of fifty-eight such loans. (Compl.¶ 9.) Empire 1997–3, through Ocwen, collects payments on those notes, and these payments include the allegedly illegal fees and rates of which Plaintiffs complain. Although there is no evidence showing that Empire 1997–3 has foreclosed on any property in Tennessee, should it do so, it would use Tennessee foreclosure law. None of these facts, however, show any deliberateness on the part of Empire 1997–3 directed at Tennessee in particular. Having not shown any purpose on the part of Empire 1997–3 to do an act in Tennessee, Plaintiffs have not met their burden.

The Court therefore holds that Empire 1997–3 is also not subject to specific personal jurisdiction in courts in Tennessee and grants Defendants' motion to dismiss as to Empire 1997–3.

## B. Wilmington

In response to this Court's order to show cause, the Firstplus Plaintiffs' only argument for personal jurisdiction over Wilmington is: "Plaintiffs maintain that they have made a prima facie showing of specific personal jurisdiction over ... Wilmington ... for all the reasons set forth in Plaintiffs' Response to Defendants' Motion to Dismiss and incorporate those arguments and authorities herein by reference." (Pls.' Mem. in Supp. of Pers. Jurisdiction over Defs. U.S. Bank Nat'l Ass'n and Wilmington Trust Co. at 5 n. 7.) Having held in its previous order that the Firstplus Plaintiffs' arguments regarding personal jurisdiction over Wilmington were insufficient, the Court considers Plaintiffs' continued reliance on these arguments unavailing.

As to Case No. 03–2548, Defendants argue that, because Empire 1997–3 is not subject to personal jurisdiction here, neither is Wilmington. Defendants cite no

law or evidence supporting this position. The Seacoast Plaintiffs counter Defendants' argument by asserting that there is personal jurisdiction over Empire 1997–3. The Court, however, held above that this assertion is meritless. Plaintiffs further argue that, because Defendants made no other arguments against personal jurisdiction over Wilmington, the motion to dismiss must be denied.

It is Plaintiffs' burden, not Defendants', to make a prima facie showing of personal jurisdiction. Plaintiffs presented the Court with no evidence, law, or argument on which to assess personal jurisdiction over Wilmington. Accordingly, the Court grants Defendants' motions to dismiss Wilmington for lack of personal jurisdiction.

### C. USBNA

 In response to the order to show cause, the Firstplus Plaintiffs submitted additional evidence sufficient to make a prima facie showing of general personal jurisdiction over USBNA. USBNA, a national banking institution, operates within Tennessee. Specifically, USBNA maintains more than sixty branch locations within Tennessee. (*Id.* at 2 n. 1, Ex. 1.) Plaintiffs also submitted documents indicating that USBNA foreclosed on and took ownership of several units of real property in Tennessee. (*Id.*, Ex. 2–11.) Finally, Plaintiffs allege that Shelby County records indicate that USBNA foreclosed on more than seventy properties in Shelby County.

The Court finds that maintaining more than sixty branch bank locations in Tennessee indicates that USBNA had contacts with Tennessee that were continuous and systematic in nature. The evidence and allegations regarding a significant number of foreclosures on real property in Tennessee serves to strengthen this finding. Bringing USBNA into court in Tennessee on the basis of these contacts will not offend traditional notions of fair play and substantial justice, because the contacts imply that USBNA conducts substantial business within Tennessee. Plaintiffs made a sufficient prima facie showing of general personal jurisdiction over USBNA in Tennessee. The Court therefore denies Defendants' motions to dismiss as to USBNA.

### V. Conclusion

Plaintiffs made no allegations that show systematic or continuous contacts by Empire 1997–3 with Tennessee so as to permit the exercise of general personal jurisdiction over Empire 1997–3. Further, Plaintiffs made no sufficient allegations that Empire 1997–3 purposefully or intentionally availed itself of the privileges of acting in Tennessee so as to permit the exercise of specific personal jurisdiction over Empire 1997–3. Plaintiff's allegations regarding Wilmington are similarly insufficient to show personal jurisdiction. Plaintiffs bear the burden of making a prima facie showing of personal jurisdiction. Accordingly, the Court **GRANTS** Defendants' motions to dismiss as to Empire 1997–3 and Wilmington. Plaintiffs made a sufficient prima facie showing that USBNA maintained systematic and continuous contacts with Tennessee so as to merit the exercise of general personal jurisdiction over USBNA. Accordingly, the Court **DENIES** Defendants' motions to dismiss as to USBNA.