FIRST HORIZON MERCHANT SER-VICES, INC., a Tennessee corporation, Plaintiff–Appellant,

v.

WELLSPRING CAPITAL MANAGE-MENT, LLC, a Delaware limited liability company; Wellspring Capital Partners II, LP, a Delaware limited partnership; Loan Capital Funding, LLC, a Delaware limited liability company; Philip Bakes, Greg Feldman, Jason Fortin, George Gremse, Barry Kaplan, David Mariano, Andrew McKey, Carl Stanton, and Craig Toll, individually, Defendants–Appellees.

No. 05CA2370.

Colorado Court of Appeals, Div. II.

April 19, 2007.

As Modified on Denial of Rehearing June 14, 2007.

170

Ireland, Stapleton, Pryor & Pascoe, P.C., Richard L. Shearer, Timothy G. Atkinson, J. Alan Call, Laura J. Hazen, Denver, Colorado, for Plaintiff–Appellant.

Boies, Schiller & Flexner, LLP, Kenneth F. Rossman, IV, Oakland, California; Boies, Schiller & Flexner, LLP, Jonathan D. Schiller, Nicholas A. Gravante, Jr., Christopher E. Duffy, New York, New York, for Defendants–Appellees.

Opinion by Judge LOEB.

In this litigation between a creditor of a bankrupt company and the company's officers, directors, and majority stockholders, plaintiff, First Horizon Merchant Services, Inc., appeals the judgment dismissing its complaint against defendants, Wellspring Capital Management LLC, Wellspring Capital Partners II, LP, Loan Capital Funding, LLC, Philip Bakes, Greg Feldman, Jason Fortin, George Gremse, Barry Kaplan, David Mariano, Andrew McKey, Carl Stanton, and Craig Toll. The district court dismissed the complaint pursuant to C.R.C.P. 12, concluding that it lacks personal jurisdiction over defendants or, alternatively, First Horizon lacks standing to sue them. We affirm in

part, reverse in part, vacate in part, and remand for further proceedings.

First Horizon, a wholly owned subsidiary of First Tennessee Bank, is a Tennessee corporation with its principal place of business in Englewood, Colorado. In 1998, First Horizon entered into a Merchant Agreement with Travel Industry Partners Corporation, now known as Far & Wide, a large international leisure tour operator based in Florida. Under the Merchant Agreement, First Horizon processed credit card transactions between Far & Wide and its customers.

When a customer purchased a tour from Far & Wide, the customer paid an advance deposit. When the advance was paid by credit card, First Horizon transmitted the charge information to the customer's card issuer bank, which would pay the amount of the charge to First Horizon. First Horizon would then pay Far & Wide. If the customer later disputed the charge to Far & Wide, First Horizon was responsible for refunding the amount received from the card issuer bank. First Horizon was then entitled to a corresponding refund from Far & Wide for that chargeback.

On September 24, 2003, Far & Wide ceased operating and filed for Chapter 11 bankruptcy protection in Florida. Customers who had made advance deposits, but had not received the travel services for which they had paid, disputed the charges and received their money back from their credit card issuers. The credit card issuers in turn charged back and received their money from First Horizon, which did not get refunds from Far & Wide. The amount of the chargebacks received and paid by First Horizon was close to $10 million. First Horizon filed a proof of claim in the Far & Wide bankruptcy proceeding for these funds.

In July 2004, First Horizon filed this action against defendants. The corporate defendants (collectively, Wellspring) were majority stockholders in Far & Wide; the individual defendants were officers and directors of Far & Wide, and partners and directors of Wellspring. In its amended complaint, First Horizon asserts claims for tortious interference with contract, unjust enrichment, fraud on creditors, civil conspiracy, and fraudulent or negligent misrepresentation against all individual and corporate defendants, as well as for breach of fiduciary duty against the individual defendants.

Defendants filed a motion to dismiss pursuant to C.R.C.P. 12 on a variety of grounds, including lack of personal jurisdiction and standing. First Horizon opposed the motion to dismiss and also filed a motion for leave to conduct discovery on the issue of personal jurisdiction. The district court granted the motion to dismiss on the grounds that it lacks personal jurisdiction over defendants or, alternatively, that First Horizon lacks standing to prosecute its claims for relief. The court also denied First Horizon's motion for jurisdictional discovery. This appeal followed.

We review a district court's ruling on a motion to dismiss de novo. In conducting that review, we accept as true all averments of material fact contained in the complaint and view the allegations of the complaint in the light most favorable to the claimant. *Kaercher v. Sater*, 155 P.3d 437 (Colo.App. 2006); *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1129 (Colo.App.2003).

## I. Personal Jurisdiction

First Horizon contends the district court erred as a matter of law in granting the motion to dismiss for lack of personal jurisdiction, because the requirements of the Colorado long-arm statute and traditional notions of due process were satisfied with regard to each defendant. We agree with First Horizon that the court erred in granting the motion to dismiss on personal jurisdiction grounds as to defendants Craig Toll and Andrew McKey, but reject the remainder of First Horizon's personal jurisdiction contentions. We also reject First Horizon's related contention that the district court abused its discretion in not allowing jurisdictional discovery.

■ Whether a court may exercise personal jurisdiction over a nonresident defendant is a question of law, which we review de novo. *In re Marriage of Malwitz*, 99 P.3d 56, 59 (Colo.2004).

A plaintiff must establish a prima facie case of personal jurisdiction to overcome a C.R.C.P. 12(b)(2) motion to dismiss. A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. Where the court decides a C.R.C.P. 12(b)(2) motion based only on documentary evidence, such evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties. The district court may not decide material issues of jurisdictional fact against a plaintiff without an evidentiary hearing. *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1190 (Colo.2005).

A plaintiff seeking to invoke a Colorado court's jurisdiction over a nonresident defendant must comply with the requirements of our long-arm statute and constitutional due process. "Because the General Assembly intended for our long-arm statute to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado [C]onstitutions, we necessarily address the requirements of the long-arm statute when we engage in constitutional due process analysis." *Archangel Diamond Corp. v. Lukoil, supra,* 123 P.3d at 1193.

Due process requires that a defendant have certain minimum contacts with the forum state so that he or she may foresee being answerable in court there. The quantity and nature of the minimum contacts required depends on whether the plaintiff alleges specific or general jurisdiction. *Archangel Diamond Corp. v. Lukoil, supra,* 123 P.3d at 1194.

General jurisdiction exists when the activities of a nonresident defendant in the forum state are "continuous and systematic, of a general business nature." *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267, 1271 (Colo.2002).

"Specific jurisdiction is properly exercised where the injuries triggering litigation arise out of and are related to 'activities that are significant and purposefully directed by the defendant at residents of the forum.' " *Archangel Diamond Corp. v. Lukoil, supra,* 123 P.3d at 1194 (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1271); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

At oral argument, counsel for First Horizon stated that its contentions here were based on both general and specific jurisdiction. However, contrary to counsel's assertion, First Horizon's arguments, both in the district court and in its appellate briefs, were based exclusively on principles of specific jurisdiction. Thus, we limit our discussion to that concept.

The minimum contacts inquiry in regard to specific jurisdiction is essentially a two-part test assessing (1) whether the defendant purposefully availed himself or herself of the privilege of conducting business in the forum state, and (2) whether the litigation arises out of the defendant's forum-related contacts. With respect to the "arising out of" prong of the specific jurisdiction test, the actions of the defendant giving rise to the litigation must have created a "substantial connection" with the forum state. *Archangel Diamond Corp. v. Lukoil, supra,* 123 P.3d at 1194 (quoting *OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir.1998)).

Even a single act can sometimes support specific jurisdiction. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1271; *In re Parental Responsibilities of H.Z.G.,* 77 P.3d 848, 852 (Colo.App.2003).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)); *see Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1271. Considerations like the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective

relief may sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1271–72.

"Frequently, the commission of a tort, in itself, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry." *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233, 237 (Colo.1992). In such cases, there is no need to engage further in a minimum contacts analysis, because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction. *Classic Auto Sales, Inc. v. Schocket, supra,* 832 P.2d at 237. In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the United States Supreme Court "approved an 'effects' test and held that where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process." *Classic Auto Sales, Inc. v. Schocket, supra,* 832 P.2d at 237.

### A. Craig Toll

First Horizon contends it established a prima facie showing that Craig Toll committed sufficient acts to subject himself to personal jurisdiction in Colorado. We agree.

The pertinent facts, as set forth in the amended complaint, the affidavits, and the documents submitted by the parties, are as follows. Craig Toll, a resident of Florida, was Chief Financial Officer of Far & Wide. In connection with the audit of Far & Wide's financial statements in 2001, Far & Wide received a "going concern" caution, which is an auditor's caution that the viability of the business is questionable. In May 2003, W.M., First Horizon's Executive Vice President of Risk Management, received a letter from Toll, enclosing Far & Wide's 2001 financial statements, which alerted W.M. to the "going concern" issue. The letter was ad-dressed to W.M. at First Horizon's office in Colorado.

On June 30, 2003, as a followup to a telephone conversation with a director of First Horizon, Toll sent another letter addressed to W.M. at First Horizon's Colorado office, enclosing additional financial information, including audited financial information for 2002 and unaudited financial information for the first three months of 2003. In the letter, Toll stated:

As you probably know, the travel environment has improved since the end of the Iraq War and I appreciate your willingness to consider the possibility of a visit to your offices to tell you more about our business, answer any questions you may have about the financials and bring you up to date on our progress and activities. As a short summary, I can tell you our bookings have returned to levels consist[ent] with 2002 bookings, our cash inflows are stable and our operating costs, which were cut substantially in conjunction with the impending war, remain low and we are successfully operating at the reduced levels

. . . .

Please don't hesitate to contact me after you have had a chance to review all this material and when you have a better idea of the possibility of meeting with you the week of July 14. . . .

On July 11, 2003, W.M. and two other executives from First Horizon, situated in their Colorado office, participated in a conference call with Toll and defendant Andrew McKey. W.M.'s affidavit states that, during the conference call, Toll represented as follows:

Since early May 2003, "bookings had returned to prior year levels and are starting to exceed 2002 . . . ."

Far & Wide and its subsidiaries had a "strong and supportive outside investor group," including Wellspring, which Mr. Toll represented had publicly stated was committed to see Far & Wide succeed by providing sufficient financial backing necessary to meet the business needs of Far & Wide and its subsidiaries and divisions. Mr. Toll represented, with apparent au-

thority to speak on behalf of Wellspring, that Wellspring's financial commitment to Far & Wide was in addition to assisting Far & Wide with obtaining an extension of the Far & Wide loan from Ableco Loan to January 15, 2004.

According to W.M.'s affidavit, on that same day, Toll also forwarded a Power Point presentation to First Horizon's Colorado office, which supplemented the statements he made in the telephone conversation.

First Horizon asserts that Toll did not disclose that, at the time of his communications, Far & Wide was insolvent, that it was not paying its trade vendors, and that the loan extension it intended to sign would tie all its cash to a single lender. According to First Horizon, it relied on Toll's representations and continued its credit card processing relationship with Far & Wide without creating any kind of reserve. Two months later, Far & Wide was in bankruptcy, and First Horizon allegedly suffered approximately $10 million in losses.

First Horizon contends that the two letters, the Power Point presentation, and the conference call were sufficient contacts to establish a prima facie showing that a Colorado court has personal jurisdiction over Toll. We agree.

▮ To establish a prima facie case, First Horizon must raise a reasonable inference that the court has personal jurisdiction over Toll. Because there was no evidentiary hearing, any disputes of material fact must be resolved in favor of First Horizon. *See Archangel Diamond Corp. v. Lukoil, supra.*

We conclude that, by authoring and forwarding letters to First Horizon in Colorado, sending a Power Point presentation to First Horizon in Colorado, and making statements during the conference call with First Horizon's executives in Colorado, in an attempt to reassure First Horizon concerning Far & Wide's financial situation so that First Horizon would continue to do business and process travel customer credit card payments, Toll purposefully availed himself of the privilege of acting in Colorado, and that First Horizon's cause of action arises from the consequences to First Horizon in Colorado from the losses it incurred.

We also conclude Toll's contacts and connection with Colorado were sufficiently substantial to make the exercise of jurisdiction over Toll reasonable and thereby support a finding of personal jurisdiction consistent with due process. *See In re Marriage of Malwitz, supra.* Because First Horizon alleges specific tortious conduct by Toll (namely, fraud by misrepresentation and concealment), undertaken outside the forum, but expressly directed at causing a harmful effect within Colorado, in our view the "effects test" is satisfied, and there is a sufficient nexus with Colorado to satisfy due process. *See Classic Auto Sales, Inc. v. Schocket, supra* (contact by telephone or mail may furnish necessary minimum contacts consistent with due process requirements); *In re Parental Responsibilities of H.Z.G., supra* (letter sufficient to establish personal jurisdiction); *see also Wegerer v. First Commodity Corp.,* 744 F.2d 719, 727 (10th Cir.1984)(series of fraudulent letters sufficient to establish personal jurisdiction); *Wempe v. Sunrise Med. HHG, Inc.,* 61 F.Supp.2d 1165 (D.Kan.1999)(fraudulent statements in two phone calls sufficient to establish personal jurisdiction). *But see Archangel Diamond Corp. v. Lukoil, supra* (defendant's communications with Archangel in Colorado did not raise the inference that defendant was subject to Colorado jurisdiction, in part because Archangel had unilaterally decided to move its place of business to Colorado, and the communications concerned disputes between the parties that existed prior to the move); *see also Bennett Waites Corp. v. Piedmont Aviation, Inc.,* 563 F.Supp. 810, 812 (D.Colo. 1983)(two informational phone calls not enough to support a finding of personal jurisdiction, unlike a case where specific misrepresentations were made by telephone into the forum state).

### B. Andrew McKey

▮ First Horizon contends it established a prima facie case showing that defendant Andrew McKey also committed specific acts to subject himself to personal jurisdiction in Colorado. We agree.

Andrew McKey, a resident of New York, was the Executive Vice President and a director of Far & Wide. His affidavit states that he had never lived in Colorado, leased or owned property in Colorado, held any professional or driver's licenses in Colorado, filed taxes in Colorado, or registered to vote in Colorado, and he had no bank accounts, offices, phone listings, or employees in Colorado. He states that he had never given any other defendant authority to act as his agent and had never acted as an agent of any other defendant with respect to Far & Wide's business. However, McKey's affidavit admits that he had "three or four" telephone conversations with First Horizon.

W.M.'s affidavit states that McKey "participated" in the July 11 conference call with Toll, but there is no specific allegation that, during the call, McKey made any statements with respect to Far & Wide's financial condition. Rather, First Horizon takes the position that, based on his knowledge of Far & Wide's financial condition and his awareness of Toll's representations to First Horizon, McKey nevertheless had a duty to speak up in the conference call and correct material omissions allegedly made by Toll during the call and in Toll's written presentations to First Horizon. Thus, W.M.'s affidavit states, "McKey also participated in the call and said nothing to indicate that Mr. Toll's statements and representations to me and the other First Horizon ... representatives who participated in the call were untrue."

■ The elements of fraudulent concealment are (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *See Kopeikin v. Merchs. Mortgage & Trust Corp.*, 679 P.2d 599, 601 (Colo.1984).

We agree this activity on McKey's part, although limited, was sufficient to create a reasonable inference that he purposefully availed himself of the privilege of acting in Colorado or of causing important conse-

quences in Colorado and that the exercise of personal jurisdiction over McKey, under the circumstances here, would be consistent with due process. *See Archangel Diamond Corp. v. Lukoil, supra; Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.* Accordingly, contrary to the district court's conclusion, First Horizon has established a prima facie case of personal jurisdiction over McKey.

### C. Other Individual Defendants

■ First Horizon also contends that all the other individual defendants are also subject to personal jurisdiction in Colorado. We disagree.

Philip Bakes, a Florida resident, was the Chief Executive Officer and director of Far & Wide. Greg Feldman, a resident of New York, was a director and managing partner of Wellspring, and was also a director of Far & Wide. Jason Fortin, a resident of New York, was a director and partner of Wellspring, and also a director of Far & Wide. George Gremse, a resident of Florida, was the President and Chief Operations Officer of Far & Wide. Barry Kaplan, currently a resident of New Jersey and formerly a resident of Florida, was Executive Vice President and Secretary of Far & Wide. David Mariano, a resident of New York, was a director and partner of Wellspring, and also a director of Far & Wide. Carl Stanton, a resident of New York, was a director and partner of Wellspring, and a director of Far & Wide.

Each of the individual defendants affirmed by affidavit that he had never lived in Colorado, leased or owned property in Colorado, held any professional or driver's licenses in Colorado, filed taxes in Colorado, or registered to vote in Colorado, and that he had no bank accounts, offices, phone listings, or employees in Colorado.

Further, First Horizon does not allege any specific actions by these other individual defendants that would tend to show they voluntarily and purposefully availed themselves of the privilege of acting in Colorado or of causing important consequences in Colorado. *See In re Marriage of Malwitz, supra.*

We therefore reject First Horizon's contention that the alleged failure of these indi-

vidual defendants to protect the interests of First Horizon, as one of Far & Wide's creditors, established sufficient minimum contacts with Colorado, such that the assertion of personal jurisdiction over any of them would comport with fair play and substantial justice. *See Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

### D. Corporate Defendants

 First Horizon contends that the corporate defendants are also subject to personal jurisdiction in Colorado. We disagree.

The corporate defendants are as follows. Wellspring Capital Partners II is a Delaware limited liability partnership whose objective is to realize significant capital appreciation by direct investment in securities of undermanaged or undervalued companies. Wellspring Capital Management is a Delaware limited liability company that manages Wellspring Capital Partners II. Loan Capital Funding is a Delaware limited liability company that is wholly owned by Wellspring Capital Partners II. In 1999, Wellspring acquired a majority interest in the stock of Far & Wide.

According to the affidavits and other documents in the record, the three corporate defendants have no employees or offices in Colorado, own no property in Colorado, are not registered to do business in Colorado, do no banking in Colorado, do not maintain an agent for service of process in Colorado, and generally do no business in Colorado.

Further, First Horizon does not allege any specific facts or any specific actions by the corporate defendants that show that they voluntarily and purposefully availed themselves of the privilege of acting in Colorado or of causing important consequences in Colorado. *In re Marriage of Malwitz, supra.*

Again, we reject First Horizon's contention that the failure of these defendants to protect First Horizon's interests as a Far & Wide creditor established minimum contacts with Colorado, such that the assertion of personal jurisdiction over them would comport with fair play and substantial justice. *See Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

### E. Alternative Theories of Jurisdiction

First Horizon contends that the individual and corporate defendants are subject to personal jurisdiction in Colorado through theories of agency, alter ego, or conspiracy. We disagree.

 The agency theory of personal jurisdiction is based on the concept that the principal is responsible for the actions of an agent. "An agent can make his principal responsible for his actions if he is acting pursuant to either actual or apparent authority." *Willey v. Mayer,* 876 P.2d 1260, 1264 (Colo.1994). An agent may be a corporation as well as an individual. "[A]s all corporations must necessarily act through agents, a wholly owned subsidiary *may be an agent* and when its activities as an agent are of such a character as to amount to *doing business of the parent,* the parent is subjected to the in personam jurisdiction of the state." *SGI Air Holdings II LLC v. Novartis Int'l AG,* 239 F.Supp.2d 1161, 1166 (D.Colo.2003) (quoting *Curtis Publ'g Co. v. Cassel,* 302 F.2d 132, 137 (10th Cir.1962)).

 If a subsidiary is merely an alter ego of the principal, the corporate veil may be pierced, "if not doing so would defeat public convenience, justify wrong, or protect fraud." *Great Neck Plaza, L.P. v. Le Peep Rests., LLC,* 37 P.3d 485, 490 (Colo.App.2001).

 For purposes of personal jurisdiction, agency and alter ego, while different legal concepts, often depend on the same facts when parent and subsidiary corporations are involved. Particularly, facts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant for both theories. "Such control could be evidence that the subsidiary is the parent's alter ego because the subsidiary has no real separate corporate existence." *SGI Air Holdings II LLC v. Novartis Int'l AG, supra,* 239 F.Supp.2d at 1166. Similarly, such control could be evidence that the subsidiary is the parent's agent because the subsidiary is conducting the "real" business of the parent. The objective of either theory is to establish that the parent company has the minimum contacts with the forum neces-

sary to support a finding of jurisdiction. *SGI Air Holdings II LLC v. Novartis Int'l AG, supra,* 239 F.Supp.2d at 1166.

To exercise personal jurisdiction on a theory of either agency or alter ego, the plaintiff bears the burden of demonstrating a prima facie case. *Berry v. Lee,* 428 F.Supp.2d 546, 556 (N.D.Texas 2006); *Williams v. Firstplus Home Loan Owner Trust 1998–4,* 310 F.Supp.2d 981, 994 (W.D.Tenn.2004)(plaintiff must allege facts that show agency relationship such that personal jurisdiction may be maintained); *Beyond Sys., Inc. v. Realtime Gaming Holding Co.,* 388 Md. 1, 878 A.2d 567, 574 (2005).

Some courts, not including those in Colorado, have also recognized a conspiracy theory of personal jurisdiction. That theory applies when two or more persons conspire to do something that they could reasonably expect to lead to consequences in the forum state and one of the co-conspirators commits overt acts in furtherance of the conspiracy of a type that would submit a nonresident to personal jurisdiction under the long-arm statute of the forum state. Then those overt acts are attributable to the other co-conspirators, who become subject to personal jurisdiction in the forum state, even without direct contacts with the forum. *See Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d 846, 857 (Tenn.Ct.App.2000).

However, even those courts that have adopted the conspiracy theory of personal jurisdiction have held that the mere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court. *See Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10th Cir.1972); *Dodson Int'l Parts, Inc. v. Altendorf,* 181 F.Supp.2d 1248, 1254 (D.Kan.2001); *Bennett Waites Corp. v. Piedmont Aviation, Inc., supra,* 563 F.Supp. at 812 (mere conclusory statements in a complaint are inadequate to constitute sufficient pleading of a conspiracy). "The requirement of a prima facie factual showing is necessitated by the minimum contacts requirement." *Baldridge v. McPike, Inc., supra,* 466 F.2d at 68.

■ Here, First Horizon alleges in paragraph 22 of its amended complaint that "any separate existence of Defendants Wellspring, Far & Wide and the Far & Wide Subsidiaries and Divisions was a mere sham and each of these entities was an alter ego and the mere instrumentality of the other." In paragraph 23, First Horizon alleges that all the defendants "conspired, agreed, and acted in concert to further wrongful and unlawful purposes and acted as agents and representatives of one another, within the course and scope of the agency relationship, in connection with the wrongful acts alleged in this First Amended Complaint." First Horizon also alleges in paragraph 49:

> The separate corporate identities of Wellspring, Far & Wide and the Far & Wide Subsidiaries and Divisions were disregarded by Wellspring and the Individual Defendants in a manner which allowed Wellspring and the Individual Defendants to directly or indirectly control Far & Wide and the Far & Wide Subsidiaries and Divisions in order to wrongfully avoid legal obligations to First Horizon, and to unfairly promote and give preference to the financial interests of Wellspring . . . .

We conclude these statements in First Horizon's amended complaint present nothing more than conclusory allegations to support the theories of agency, alter ego, or conspiracy, and First Horizon states no specific facts in support of any of those theories. *See Baldridge v. McPike, Inc., supra; Bennett Waites Corp. v. Piedmont Aviation, Inc., supra.*

In their affidavits, the individual defendants, including Toll and McKey, each denied the existence of any facts to support the agency and conspiracy theories. Because First Horizon presents no specific facts to demonstrate a prima facie case for agency or alter ego, we conclude the district court correctly declined to find personal jurisdiction based on these theories.

Further, because First Horizon makes only conclusory allegations of conspiracy and because these allegations are controverted by the affidavits of the alleged co-conspirators, the district court correctly refused to find that it has personal jurisdiction based on a

conspiracy theory. *See Baldridge v. McPike, Inc., supra,* 466 F.2d at 68; *Dodson Int'l Parts, Inc. v. Altendorf, supra.* Accordingly, we need not decide whether the conspiracy theory of personal jurisdiction should be adopted as the law in Colorado.

### F. Jurisdictional Discovery

█ First Horizon contends the district court abused its discretion in refusing its request for jurisdictional discovery. We disagree.

█ "[T]he regulation of pretrial discovery on the issue of personal jurisdiction, including the denial of discovery, is within the trial court's discretion ...." *Wenz v. Nat'l Westminster Bank, PLC,* 91 P.3d 467, 469 (Colo.App.2004). On review, we will not disturb a discovery ruling absent an abuse of discretion. An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *Wenz v. Nat'l Westminster Bank, PLC, supra,* 91 P.3d at 469.

█ "Where a plaintiff has failed to present facts that show how personal jurisdiction might be established if discovery were permitted, it is not an abuse of discretion to deny discovery on the issue." *Wenz v. Nat'l Westminster Bank, PLC, supra,* 91 P.3d at 469; *see also Wyatt v. Kaplan,* 686 F.2d 276, 284 (5th Cir.1982) ("Discovery on matters of personal jurisdiction, therefore, need not be permitted unless the motion to dismiss raises issues of fact.").

█ It is not manifestly arbitrary, unreasonable, or unfair, and thus not an abuse of discretion, to require a plaintiff to assert facts sufficient to satisfy the trial court that discovery might reveal evidence showing personal jurisdiction before requiring a defendant to bear the cost and burden of responding to discovery. *Wenz v. Nat'l Westminster Bank, PLC, supra,* 91 P.3d at 470 (denying request for discovery on issue of agency).

Because we have concluded First Horizon offered only speculative and conclusory assertions about defendants' contacts with Colorado, with the exception of Toll and McKey, and failed to provide any facts that show how jurisdiction might be established if the court

permitted discovery, we further conclude the district court did not abuse its discretion in denying First Horizon's request for discovery on jurisdictional issues.

### II. Standing

Given our conclusion that defendants Toll and McKey are subject to personal jurisdiction in this case, we must address the district court's alternative ruling that First Horizon does not have standing to pursue its claims for relief against those two defendants. The district court reasoned that such claims are derivative and are owned by Far & Wide's bankruptcy trustee. We agree with that ruling, except as to the fraud claim asserted against Toll and McKey.

█ As a preliminary matter, we agree with First Horizon's contention that the district court's standing ruling as to all defendants other than Toll and McKey should be vacated. A trial court may, where appropriate, issue alternative rulings. *See Nelson v. Hammon,* 802 P.2d 452, 457 (Colo.1990). However, under the circumstances here, because we have concluded that the district court lacks personal jurisdiction over defendants other than Toll and McKey, we further conclude it was unnecessary for the district court to decide, and similarly, is unnecessary for us to review, whether First Horizon has standing to assert its claims against those defendants. Vacating this ruling will eliminate any potential unfairness to First Horizon, should it bring an action against such defendants in a state where they are subject to personal jurisdiction. Accordingly, we vacate the court's standing ruling as to all defendants other than Toll and McKey, and we limit our discussion here to those two defendants.

█ Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit only to protect a cognizable interest. *Durdin v. Cheyenne Mountain Bank,* 98 P.3d 899, 902 (Colo.App.2004). Standing is a threshold issue that must be satisfied in order to decide a case on the merits. *Ainscough v. Owens,* 90 P.3d 851, 855 (Colo.2004). "A plaintiff has standing if he or she has an injury in fact and that injury is to a legally

protected interest." *Durdin v. Cheyenne Mountain Bank, supra,* 98 P.3d at 902. Because standing is an issue of law that concerns a court's subject matter jurisdiction, we review the trial court's determination de novo. *Durdin v. Cheyenne Mountain Bank, supra.*

■ After a bankruptcy petition is filed, an estate is created whose property includes all legal claims that the debtor could have pursued at the time of filing. *See* 11 U.S.C. § 541; *Alexander v. Anstine,* 152 P.3d 497 (Colo.2007); *Summers v. Perkins,* 81 P.3d 1141, 1142 (Colo.App.2003). "Only the bankruptcy trustee has standing to assert claims that are the property of the bankruptcy estate." *Summers v. Perkins, supra,* 81 P.3d at 1142.

■ If a cause of action alleges only indirect harm to a creditor (that is, an injury that derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *In re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994).

■ Whether certain claims belong to the debtor or its creditors is a question of state law. *Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993).

Because Far & Wide, the corporation in bankruptcy, is incorporated under Delaware law, and because First Horizon and defendants agree that Delaware law applies, we look to Delaware law to determine whether First Horizon's claims against Toll and McKey belong to Far & Wide's bankruptcy estate.

■ It is a "settled rule that a creditor of a debtor corporation does not have standing to bring claims based on conduct that directly injured the corporation, but only indirectly injured the creditor." *Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd.,* 226 B.R.

407, 417–18 (E.D.Wis.1998) (applying Delaware law). "The rule permits the injured corporation to pursue the claim for the benefit of all creditors, thereby preventing double recoveries." *Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd., supra,* 226 B.R. at 418.

■ The issue of whether a claim is derivative or direct under Delaware law turns on the following questions: As between the corporation and those making the direct claim, (1) who suffered the alleged harm and (2) who would receive the benefit of any remedy? *See Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del. 2004). The court must look to all the facts of the complaint to determine whether a direct claim exists. *In re Syncor Int'l Corp. S'holders Litig.,* 857 A.2d 994, 997 (Del.Ch.2004); *see Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd., supra,* 226 B.R. at 418 (claim for depletion of a company's assets, thereby making the company unable to pay its debts, was obviously derivative).

Here, the district court found that "the gravamen of First Horizon's claims is that Defendants diverted the corporate assets of Far & Wide for their own benefit, thereby damaging Far & Wide's creditors, including First Horizon." Accordingly, the court concluded that First Horizon lacks standing to pursue these claims.

First Horizon alleges in paragraph 45 of its amended complaint:

> Wellspring, acting through all or some of the Individual Defendants and other principals, agents and representatives of Wellspring, diverted substantial amounts of money from Far & Wide and the Far & Wide Subsidiaries and Divisions for salaries paid to Far & Wide and Wellspring principals, for various non-essential and excessive expenses such as travel and entertainment for the Individual Defendants, and for expenses other than those related to the purposes for which the advance deposits were paid by the customers and funded by First Horizon, all of which was for the direct and indirect benefit of Wellspring and the Individual Defendants.

In paragraph 46, First Horizon alleges, in pertinent part:

[A]t the same time the advance deposit funds of Far & Wide ... were diverted, officers and employees of Far & Wide ... were directed by Wellspring and the Individual Defendants acting for their direct and indirect benefits and as agents and representatives of Wellspring, *not to pay trade creditors* of Far & Wide ... including First Horizon.

(Emphasis added.)

Similarly, paragraph 49 alleges generally that the separate corporate entities of Wellspring and Far & Wide were disregarded "to the detriment of Far & Wide ... and [its] creditors, including First Horizon."

▆▆▆▆ After careful review of each of First Horizon's claims for relief, we conclude that the only claim asserted against Toll and McKey that is direct and not derivative is the sixth claim for relief for fraud.

First Horizon's first claim is for tortious interference with contract. First Horizon alleges that defendants, including Toll and McKey, "wrongfully induced and caused Far & Wide and the Far & Wide Subsidiaries and Divisions to wrongfully divert customer advance deposits." We conclude this is a claim that Toll and McKey diverted money from Far & Wide, that Far & Wide was, therefore, injured, and that as a result, all its creditors were injured. Accordingly, it is a derivative claim.

First Horizon's second claim for relief, for unjust enrichment, alleges that "some or all of the customer advance deposit monies were wrongfully diverted for the direct and/or indirect benefit of Wellspring, and the Individual Defendants, including payment of loans guaranteed by some or all of the Defendants." In paragraph 59 of the second claim, First Horizon refers to itself as a "trade creditor" that would otherwise have received repayment. Thus, we conclude the second claim is also a claim that money was diverted from Far & Wide, injuring Far & Wide and all its creditors. Accordingly, it is a derivative claim.

First Horizon's third claim is for breach of fiduciary duty by the individual defendants, including Toll and McKey. As pertinent here, First Horizon alleges the individual defendants owed a fiduciary duty to it as a creditor of Far & Wide, and breached that duty by diverting customer advance deposits to pay other Far & Wide obligations, including those for the benefit of defendants. Thus, we conclude this claim also is derivative. *See Delgado Oil Co. v. Torres*, 785 F.2d 857, 861 (10th Cir.1986) (however skillfully pleaded, claims for breach of fiduciary duties by corporate director apply to all creditors and hence belong to the estate).

First Horizon relies on *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 790–91 (Del.Ch.2004), for the proposition that "[w]hen a firm has reached the point of insolvency, it is settled that under Delaware law, the firm's directors are said to owe fiduciary duties to the company's creditors." However, breach of fiduciary duty claims may be brought by the bankruptcy trustee. *See Prod. Res. Group, L.L.C. v. NCT Group, Inc., supra*, 863 A.2d at 792 (in discussing creditors' claims against directors for breach of fiduciary duty, the court held "when a director of an insolvent corporation, through a breach of fiduciary duty, injures the firm itself, the claim against the director is still one belonging to the corporation"); *see also Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd., supra*, 226 B.R. at 418.

First Horizon's fourth claim is specifically labeled "fraud on creditors." It alleges fraudulent transfers as to present and future creditors of Far & Wide. Therefore, the claim, as asserted against Toll and McKey, belongs to Far & Wide on behalf of all its creditors, and is derivative in nature.

First Horizon's fifth claim for relief is for civil conspiracy. This claim alleges that all defendants "conspired, agreed, and acted in combination with one another to accomplish wrongful and unlawful purposes, and pursued that civil conspiracy and engaged in a common course of conduct and common enterprise for personal gain and advantage *to the detriment of trade creditors*" (emphasis added). In substance, this is also a claim that Toll and McKey diverted money from Far & Wide, that Far & Wide was injured, and that,

as a result, all its creditors were injured. Accordingly, it is a derivative claim.

We reach a different conclusion with respect to First Horizon's sixth claim, for fraudulent or negligent misrepresentation or concealment. While the sixth claim refers to misrepresentations in press releases on which "trade creditors" in general relied, it also alleges with particularity Toll's misrepresentations and omissions to First Horizon in the letters and telephone conference discussed above. Further, First Horizon alleged harm and injury that it suffered directly as a result of these misrepresentations and omissions that was independent of any alleged injury to Far & Wide. Accordingly, First Horizon would receive the benefit of any recovery in this case and could prevail on the sixth claim without showing any injury to Far & Wide. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d at 1033, 1039; *cf. Smith v. Waste Management, Inc.*, 407 F.3d 381 (5th Cir. 2005) (where fraudulent misconduct alleged by shareholder did not injure shareholder or any other shareholder directly, but instead only injured them indirectly as a result of their ownership of defendant company's shares, shareholder's claims against company were derivative rather than direct). Therefore, to the extent the sixth claim alleges a direct injury and harm to First Horizon based on direct and specific misrepresentations and omissions made by Toll and not corrected by McKey, despite his alleged participation in the telephone conference and knowledge of the true facts, we conclude it is a direct claim asserted by First Horizon. Hence, First Horizon has standing to pursue this claim against Toll and McKey. *See In re Educators Group Health Trust, supra,* 25 F.3d at 1286 (claims based on alleged false misrepresentations to plaintiff are direct injury); *Delgado Oil Co. v. Torres, supra,* 785 F.2d at 859 n. 4 (creditor's claim for alleged fraud against director of insolvent corporation was beyond the purview of the bankruptcy proceeding).

### III. Attorney Fees and Costs

Pursuant to C.A.R. 39.5, we direct the district court on remand to determine whether defendants other than Toll and McKey are entitled to attorney fees and costs on appeal and the amount, if any, of such fees and costs.

The judgment is vacated as to the standing ruling concerning all defendants other than Toll and McKey. The judgment is reversed as to the fraud claim against Toll and McKey, and the case is remanded for further proceedings consistent with this opinion on that claim and on the other defendants' request for appellate fees and costs. The judgment is affirmed in all other respects.

Judge ROTHENBERG and Judge TERRY concur.